**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00352-RMR-KLM

KIOSK INFORMATION SYSTEMS, INC.,

                Plaintiff,

     v.

COLE KEPRO INTERNATIONAL, LLC;
AMERICAN KIOSKS; ERIC NEBOLA;
TAYLOR LIGHTSEY; AND MICHAEL
RASMUSSEN,

                Defendants.

---

**DEFENDANTS' PARTIAL MOTION TO DISMISS**

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

BACKGROUND ....................................................................................................... 4

LEGAL STANDARD ................................................................................................ 6

ARGUMENT ............................................................................................................ 6

    I.   KIOSK Has Not Identified What Trade Secrets or Confidential Information
        Defendants Purportedly Misappropriated. ............................................................. 6

    II.  The Court Should Dismiss All Claims Against Mr. Rasmussen Because
        the Complaint Fails to Specifically Allege Any Wrongdoing by Him.................... 11

    III. KIOSK fails to Plausibly State a Claim for Breach of the Employee Non-
        Solicitation Provisions......................................................................................... 12

    IV. KIOSK's Claim for Breach of the Implied Covenant of Good Faith Fails. ........... 16

    V.  KIOSK's Intentional Interference with Contract Claim Fails Because It
        Does Not Adequately Plead Cole Kepro's Knowledge. ...................................... 18

    VI. KIOSK Fails to State a Claim for Unfair Competition Because It Does Not
        Allege that Defendants' Conduct Is Likely to Confuse the Public. ..................... 19

    VII.The Economic Loss Rule Bars Many of KIOSK's Claims Against the
        Employees.......................................................................................................... 20

    VIII.KIOSK's Unjust Enrichment Claim Against the Employees Is Duplicative......... 21

CONCLUSION ...................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*23 Ltd. v. Lessing*,
  No. 2015CV31187, 2016 WL 11507259 (Denver Dist. Ct. Jan. 21, 2016)................ 21

*Acosta v. Jani-King of Oklahoma, Inc.*,
  905 F.3d 1156, (10th Cir. 2018).................................................................................. 6

*Amoco Oil Co. v. Ervin*,
  908 P.2d 493 (Colo. 1995)........................................................................................ 16

*Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.*,
  No. 13-cv-00143, 2015 WL 1469513 (D. Colo. Mar. 26, 2015)............................ 7, 10

*Armata v. Certain Underwriters at Lloyd's London – Syndicate 1861*,
  No. 21-cv-00160, 2022 WL 3227619 (D. Colo. Aug. 10, 2022) ................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................passim

*Aurora Com. Corp. v. PMAC Lending Servs., Inc.*,
  No. 13-cv-00497, 2014 WL 859253 (D. Colo. Mar. 5, 2014)..................................... 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................... 6

*Cheyenne Mtn. Sch. Dist. No. 12 v. Thompson*,
  861 P.2d 711 (Colo. 1993)........................................................................................ 14

*Dumais v. Am. Golf Corp.*,
  299 F.3d 1216 (10th Cir. 2002).................................................................................. 14

*Enriques v. Noffsinger Mfg. Co., Inc.*,
  412 F. Supp. 2d 1180 (D. Colo. 2006) ................................................................. 16, 17

*Evans v. Maytag Aircraft Corp.*,
  No. 16-cv-02264, 2017 WL 1437296 (D. Colo. Mar. 14, 2017)................................. 19

*Gates Corp. v. Dorman Products, Inc.*,
  No. 09-cv-02058, 2009 WL 5126556 (D. Colo. Dec. 18, 2009) ................................ 20

*Great Am. Opportunities, Inc. v. Kent*,
  352 F. Supp. 3d 1126 (D. Colo. 2018)....................................................................... 20

*Grynberg v. Agri Tech, Inc.*,
  10 P.3d 1267 (Colo. 2000) (en banc)............................................................................. 20

*Hauschild GMBH & CO. KG v. FlackTek, Inc.*,
  No. 20-cv-02532, 2022 WL 392501 (D. Colo. Feb. 9, 2022)................................. 7, 8, 9

*Hertz v. Luzenac Grp.*,
  576 F.3d 1103, 1118 (10th Cir. 2009)......................................................................... 19

*Interbank Inv., LLC v. Eagle River Water & Sanitation Dist.*,
  77 P.3d 814 (Colo. App. 2003) ................................................................................... 22

*Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*,
  No. 12-cv-00463, 2013 WL 212640 (D. Colo. Jan. 18, 2013) ...................................... 8

*Jaeger v. HSBC Bank USA, N.A.*,
   No. 12-cv-01736, 2013 WL 1060901 (D. Colo. Mar. 14, 2013)................................. 17

*Kaspryzk v. PNC Bank, Nat. Ass'n*,
  No. 13-cv-00247, 2013 WL 3895069 (D. Colo. July 29, 2013) ................................. 17

*Kuta v. Joint Dist. No. 50(J) of Cntys. of Delta, Gunnison, Mesa & Montrose*,
  799 P.2d 379 (Colo. 1990)........................................................................................... 14

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
  No. 10-cv-02868, 2013 WL 1231908 (D. Colo. Feb. 25, 2013)............................ 19, 20

*Lawson v. Heartland Payment Sys., LLC*,
  548 F. Supp. 3d 1085 (D. Colo. 2020)......................................................................... 16

*Louisiana Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc.*,
  No. 19-12948, 2021 WL 3471159 (E.D. La. Aug. 6, 2021) ......................................... 19

*LS3 Inc. v. Cherokee Nation Strategic Programs, L.L.C.*,
  No. 21-1385, 2022 WL 3440692 (10th Cir. Aug. 17, 2022)............................ 7, 8, 9, 11

*Micale v. Bank One, N.A. (Chicago)*,
  382 F. Supp. 2d 1207 (D. Colo. 2005)......................................................................... 21

*Murray v. Crawford*,
  No. 08-cv-02045, 2009 WL 1837445 (D. Colo. June 26, 2009) ................................. 16

*NetQuote, Inc. v. Byrd*,
  504 F. Supp. 2d 1126 (D. Colo. 2007) ......................................................................... 20

*New Mexico ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*,
    No. 09-CV-0178, 2009 WL 3672921 (D.N.M. Apr. 13, 2009) .................................... 11

*Pernick v. Computershare Tr. Co., Inc.*,
    136 F. Supp. 3d 1247 (D. Colo. 2015) ....................................................................... 22

*Printz Servs. Corp. v. Main Elec., Ltd.*,
    949 P.2d 77 (Colo. App. 1997) ................................................................................. 22

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ................................................................................ 11

*Sticky.io, Inc. v. Martingale Software, LLC*,
    No. 21-cv-00664, 2021 WL 5508429 (D. Colo. Oct. 27, 2021) ......................... 7, 8, 11

*Weight Loss Healthcare Centers of Am., Inc. v. Off. of Pers. Mgmt.*,
    655 F.3d 1202 (10th Cir. 2011) ................................................................................ 15

*Wellness Walk In Tubs, LLC v. Scripps Media, Inc.*,
    607 F. Supp. 3d 1167 (D. Colo. 2022) ....................................................................... 16

*Wells Fargo Ins. Servs. USA, Inc. v. McQuate*,
    276 F. Supp. 3d 1089 (D. Colo. 2016) ....................................................................... 14

*Young v. Wachovia Mortg. Co.*,
    No. 11-cv-01963, 2011 WL 6934110 (D. Colo. 2011) ................................................ 18

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Eric Nebola, Taylor Lightsey, Michael Rasmussen (collectively, "Employees"), and Cole Kepro International, LLC ("Cole Kepro," which encompasses its d/b/a, American Kiosks), submit this partial motion to dismiss Plaintiff KIOSK Information Systems, Inc.'s ("KIOSK") Complaint [ECF No. 1], and in support state as follows.[1]

## **INTRODUCTION**

The Court should dismiss virtually all of KIOSK's claims for failure to state a claim.

KIOSK and Cole Kepro are competitors in the kiosk industry. We are all familiar with ATMs—the most prevalent kiosks—as we walk past them every day.

In October 2021, KIOSK's then-Vice President of Sales, Eric Nebola, and then-Director of Product Management, Tucker Lightsey, left KIOSK and joined Cole Kepro. Approximately seven months later, its Prototype Systems Manager, Michael Rasmussen, did the same. Though KIOSK forced the men to sign non-solicitation and confidentiality agreements before their departure, none had non-competition agreements. Upset at losing employees to a competitor, KIOSK has now sued, vaguely alleging a conspiracy to steal its purported trade secrets, and various other claims, ranging from breach of contractual confidentiality and non-solicitation provisions, to tortious interference.

The evidence will eventually show that all of KIOSK's claims are without merit. As Defendants repeatedly explained to KIOSK in writing before this lawsuit was filed, the Employees took absolutely no confidential information with them to Cole Kepro and none

---

[1] On March 14, 2023, undersigned counsel conferred with Plaintiff's counsel about the relief sought in this motion. The Parties were unable to narrow the issues.

engaged in any improper solicitation.

KIOSK tries to create the illusion that Cole Kepro stole its entire kiosk design. In Paragraph 69 of its Complaint, KIOSK inserts an image of its cryptocurrency kiosk, and compares it to an image of Cole Kepro's counterpart. Nowhere, however, does the Complaint allege that any of this facial information is trade secret; nor could it. These kiosks are displayed publicly for anyone to see. Moreover, the components depicted in the Complaint are standard in the industry. Indeed, since at least 2021—long before the Employees left KIOSK—the industry leader in this space, Genmega, has displayed its designs and pricing publicly on the internet.[2] Nor would it even be possible for Cole Kepro to take the only possibly "hidden" trade secret embedded in such kiosks—KIOSK's software—because Cole Kepro does not develop or sell software; instead, Cole Kepro purchases software from third-parties, and focuses solely on hardware and servicing. Thus, the record will eventually refute KIOSK's over-pleaded allegations.

That said, Defendants are well aware that they must take Plaintiffs' allegations as true; however, even at this early stage, taking all of the Complaint's well-pleaded allegations as true (and they are not), the Complaint is deeply flawed and many of its claims should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

*First*, the Complaint fails to allege what confidential or trade secret information Defendants purportedly misappropriated. The only two specific examples of purported

---

[2] *See* Genmega.com, http://www.genmega.com/Kiosk/kioskmain.html#2nd (publishing various cryptocurrency kiosk designs); Bitcoinatm.com, https://bitcoinatm.com/ (publishing Genmega pricing through distributor). Curiously, KIOSK's kiosk is equally, if not even more similar, to Genmega's unit.

disclosure alleged involve communications between the Employees while they were still employed with KIOSK, and are thus facially unactionable. Beyond these distractions, the Complaint provides absolutely no specifics, relying instead on vague and conclusory allegations made on information and belief. *See, e.g.*, Compl. ¶ 79 (alleging "on information belief" that Employees breached their confidentiality obligations by "disclosing to Cole Kepro [] [unspecified] confidential and proprietary information belonging to KIOSK."). This is insufficient as a matter of law. KIOSK's claims for violation of the Defend Trade Secret Act, Colorado Uniform Trade Secret Act, and breach of contractual confidentiality obligations should be dismissed.

*Second*, KIOSK's vagueness problem does not stop with its trade secret allegations. Despite naming Mr. Rasmussen as a defendant, the Complaint fails to allege a single specific wrongful act or instance of misconduct specific to Mr. Rasmussen, relying entirely on vague allegations made on "information and belief" against the Defendants as a group. Such allegations do not satisfy Rule 8. Mr. Rasmussen should be dismissed.

*Third*, KIOSK's claim for breach of contractual non-solicitation provisions should be dismissed as to the purported solicitation of Mr. Rasmussen because the non-solicitation provisions of these contracts expired by the time of Mr. Rasmussen's hiring.

*Fourth*, KIOSK's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because the Agreements do not allege the Employees had any discretion in their performance—a necessary element of the claim—and, in the alternative, because this claim is duplicative of KIOSK's breach of contract claim.

*Fifth*, KIOSK's claim for tortious interference with contract fails because it does not

adequately allege Cole Kepro's knowledge of the Agreements purportedly interfered with.

*Sixth*, KIOSK's claim for unfair competition should be dismissed because it fails to allege the necessary element of likelihood of consumer confusion.

*Seventh*, in the event the Court does not dismiss KIOSK's contract claims, KIOSK's claims against the Employees for (1) tortious interference with prospective business advantage, (2) unfair competition, (3) breach of duty of loyalty, and (4) breach of fiduciary duty all fail under the economic loss rule because the duties purportedly arising from tort are identical to those that KIOSK elsewhere alleges arise from contract.

*Finally* and similarly, if the Court does not dismiss KIOSK's contract claims, its unjust enrichment count against the Employees fails because it is duplicative.

## **<u>BACKGROUND</u>**

Cole Kepro is a fabrication company that sells a wide variety of kiosks and related goods, including cryptocurrency kiosks, gaming kiosks, lockers, and mailboxes. It has been in business since 1993,[3] operates across the globe, and is an industry leader and innovator. Cole Kepro's headquarters are in Nevada. Compl. ¶ 13.

Cole Kepro's sales in the cryptocurrency space began at least as early as 2020, well before the events alleged in the current proceeding. By 2021, Cole Kepro was one the largest domestic manufacturer of cryptocurrency kiosks. *Cf. id.* ¶ 30 (alleging that Cole Kepro is a competitor). American Kiosks is a trade name and division of Cole Kepro, and focuses on the cryptocurrency kiosk[4] space. *Id.* ¶ 14.

---

[3] Cole Kepro has had several legal predecessors over its 30-year history.

[4] A cryptocurrency kiosk is basically an ATM that allows deposits, and for American Kiosk withdrawals in dollars, all based on the value of the customer's Bitcoin account.

Messrs. Nebola, Lightsey, and Rasmussen are all current employees of Cole Kepro. *Id.* ¶¶ 15–17. The Employees previously worked for KIOSK: Mr. Nebola as Vice President of Sales, *id.* ¶ 30, Mr. Lightsey as Director of Product Management, *id.* ¶ 32, and Mr. Rasmussen as Prototype Systems Manager, *id.* ¶ 34. Mr. Rasmussen was not an executive at KIOSK. *See id.* ¶ 34. However, in February and March of 2021, KIOSK forced all three men to sign "Executive Confidentiality Assignment Agreements" with Kiosk ("Agreements"). Compl. ¶ 36; *see also* ECF No. 1-1 to 1-3 (Agreements).[5]

As relevant to the present dispute, the Agreements purport to prohibit the Employees from (1) disclosing KIOSK's confidential information, (2) "soliciting, diverting, [or] taking away … business of any customer, supplier or other business relation of the Company or any of its Affiliates," or (3) "solicit[ing] or induc[ing]" any "employee, consultant, or contractor" to "leave the Company." *See* Agreements at 1–2, 3. They do not include a non-competition provision.

Dissatisfied with the direction of KIOSK and their treatment and compensation there, Mr. Nebola and Mr. Lightsey left KIOSK in October 2021 and joined Cole Kepro. Compl. ¶¶ 58–59. Mr. Nebola is the President (*Id.* ¶ 15), and Mr. Lightsey the Vice President at American Kiosks (*Id.* ¶ 16). In spring 2022, Mr. Rasmussen applied to and subsequently joined Cole Kepro. *Id.* ¶ 66. He too works in the American Kiosks division as the Manufacturing Engineering Manager. *See id.* ¶ 17.

Upset over its loss of talent, on February 7, 2023, KIOSK filed the present action, asserting ten counts against the Defendants.

---

[5] Unless otherwise noted, the Agreements are identical as relevant to this Motion.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a pleading must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court need only consider "well-pleaded" and non-conclusory factual allegations. *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018); *EchoStar Satellite, L.L.C. v. Splash Media Partners. L.P.*, No. 07-cv-02611, 2010 WL 1380314, at *1 (D. Colo. Mar. 31, 2010). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, or where it alleges the "mere possibility of misconduct," it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678–69.

**ARGUMENT**

I. **KIOSK Has Not Identified What Trade Secrets or Confidential Information Defendants Purportedly Misappropriated.**

KIOSK's claims for violation of the Defend Trade Secrets Act ("DTSA") (Compl. ¶¶ 101–113), violation of the Colorado Uniform Trade Secrets Act ("CUTSA") (*id*. ¶¶ 114–124), and breach of the Employee's contractual confidentiality obligations (*id*. ¶¶ 73–81) all fail because the Complaint does not allege what confidential or trade secret information Defendants purportedly misappropriated.

To survive a motion to dismiss, a plaintiff alleging misappropriation of a trade secret under either the DTSA or CUTSA must plausibly allege "'the specific types of confidential information ... with sufficient particularity to identify the existence of its claimed trade secrets.'" *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-cv-02532,

2022 WL 392501, at *9 (D. Colo. Feb. 9, 2022). Thus, although, a complaint "need not identify the specific file names or documents that defendants allegedly misappropriated," *id.*, or "lay out every minute detail of its claimed trade secret at the outset of the litigation," it must do more than describe the subject matter of the trade secrets in a "vague and conclusory manner." *Sticky.io, Inc. v. Martingale Software, LLC*, No. 21-cv-00664, 2021 WL 5508429, at *4 (D. Colo. Oct. 27, 2021). Specifically, the complaint must "explain, with sufficient particularity, the information allegedly misappropriated that constitutes a cognizable trade secret; otherwise, [the defendant] cannot adequately prepare its defense." *Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.,* No. 13-cv-00143, 2015 WL 1469513, at *5 (D. Colo. Mar. 26, 2015).

The same rule applies in cases where a plaintiff alleges both misappropriation of trade secrets and breach of confidentiality provisions. For example, in *LS3 Inc. v. Cherokee Nation Strategic Programs, L.L.C.,* No. 21-1385, 2022 WL 3440692 at *4 (10th Cir. Aug. 17, 2022), the plaintiff, a government contractor, sued its former employees and their new employer for purported trade secret violations and breach of the employees' confidentiality agreements. *Id.* at *1–2. The employees moved to dismiss, arguing that the confidential information specifically alleged in the complaint was, in fact, not confidential and thus not actionable. *Id.* at *3. The district court agreed and dismissed. *Id.* On appeal, the plaintiff argued that the district court's dismissal was premature because, in addition to plaintiff's more specific (and unactionable) allegations of purported confidential information, plaintiff had alleged theft of other unspecified confidential information "upon information and belief." *Id.* at *4. Plaintiff argued that the district court

thus should have allowed discovery to see what else the employees might have taken. *Id.* The Tenth Circuit rejected this argument, explaining "because the amended complaint failed to allege what information the Individual Employees shared, the conclusory factual allegations 'are merely consistent with,' and not indicative of, the [d]efendants' liability, and therefore 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at *5 (quoting *Iqbal*, 556 U.S. at 678).

Following this rule, this Court has routinely dismissed trade secret and confidentiality claims at the outset of litigation where the complaint's allegations were vague or conclusory. For instance, in *Hauschild,* the plaintiff alleged that the defendant had misappropriated "information regarding potential and actual [] customers and vendors" as well as "information regarding [its] processes and technology" and asserted a DTSA claim. 2022 WL 392501, at *9. The court dismissed the claim, reasoning, "plaintiff does not define 'processes' or 'technology' or explain which processes and technologies have been misappropriated." *Id.* Other decisions have done the same. *See, e.g., Sticky.io,* 2021 WL 5508429, at *4 (dismissing DTSA claim because complaint's description of purportedly misappropriated trade secrets was "wholly insufficient to provide Defendants "notice of the factual basis for [Plaintiff's] trade secret claim"); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013) (dismissing CUTSA counterclaim because defendants failed to define alleged trade secrets or "otherwise explain which particular trade secrets are alleged to have been misappropriated").

Here, as in *LS3* and *Hauschild*, KIOSK's trade secret and confidentiality claims

should be dismissed because KIOSK has not identified any specific, actionable disclosures of confidential / trade secret information by the Employees or receipt of the same by Cole Kepro. The Complaint identifies only two specific instances of purported disclosure of confidential information. However, neither is actionable.

*First*, the Complaint alleges that on October 4, 2021, Mr. Nebola attempted to send KIOSK's contracts with its customer, CSG, to Mr. Lightsey. Compl. ¶ 48. This alleged transmission is plainly unactionable because the Complaint itself alleges that the transmission was unsuccessful and Mr. Lightsey was "unable to access the attached contracts." *Id.* In addition, the allegations in the Complaint make plain that Mr. Nebola and Mr. Lightsey were still employees of KIOSK at the time, *see id.* ¶¶ 58–59 (alleging that Mr. Nebola and Mr. Lightsey left KIOSK on October 11, 2021 and October 16, 2021, respectively), so sharing between them, in the course of their employment, could not constitute a breach. Moreover, the Complaint does not allege the CSG contracts contained confidential information, or that Mr. Nebola or Mr. Lightsey ever actually disclosed those documents to Cole Kepro. This allegation fails on its own terms.

*Second*, the Complaint alleges that Mr. Nebola sent Mr. Lightsey a sales quote for Bitcoin of America ("BOA") on October 5, 2021, while the two were negotiating with BOA on KIOSK's behalf. *Id.* ¶ 52. This allegation is entirely consistent with what one would expect of two colleagues working together, within the scope of their employment, to negotiate a deal on behalf of their employer. And though the Complaint asserts without explanation that, "on information and belief," Nebola and Lightsey shared information between each other "for Cole Kepro's use and benefit," here again, there is no allegation

that the BOA sales quote contained confidential information, or that Mr. Nebola or Mr. Lightsey ever disclosed this document to Cole Kepro. Thus, this allegation also fails.

Beyond these two unactionable allegations, the most detailed description of KIOSK's purported trade secrets appears at paragraph 101 of the Complaint. That paragraph alleges that "KIOSK owns various valid trade secrets" and includes a laundry list of purported trade secrets. Compl. ¶ 101.[6] However, nowhere in the Complaint does KIOSK allege which, if any, of the items on this list Defendants purportedly misappropriated, relying instead on vague and wholly conclusory allegations, such as, "On information and belief, Defendants have acquired KIOSK's trade secrets by improper means." *Id*. ¶ 107. *See also, e.g.*, Compl. ¶ 79 (alleging "on information belief" that Employees breached their confidentiality obligations by "disclosing to Cole Kepro [] [unspecified] confidential and proprietary information belonging to KIOSK."); *id.* ¶ 69 (alleging "on information belief" that Cole Kepro "used KIOSK's confidential and proprietary information and trade secrets to design and develop a competing, and substantially similar kiosk for BOA," but failing to identify any specific piece of confidential or trade secret information purportedly used).

Such allegations do not "explain, with sufficient particularity, the information allegedly misappropriated that constitutes a cognizable trade secret," *Animal Care Sys.,* 2015 WL 1469513, at *5, and are "wholly insufficient to provide Defendants "notice of the factual basis for [KIOSK's] trade secret claim." *Sticky.io*, 2021 WL 5508429, at *4. These "threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[6] Defendants disagree that the items listed are trade secrets.

statements" do not "suffice to 'unlock the doors of discovery.'" *See LS3*, 2022 WL 3440692 at * 5 (quoting *Iqbal*, 556 U.S. at 678). KIOSK's claims for violation of the DTSA, CUTSA, and breach of confidentiality should be dismissed for failure to state a claim.[7]

## II.    The Court Should Dismiss All Claims Against Mr. Rasmussen Because the Complaint Fails to Specifically Allege Any Wrongdoing by Him.

All claims against Mr. Rasmussen should be dismissed for utter lack of specificity. "[I]n circumstances in which multiple defendants are sued, the complaint must 'make clear exactly who is alleged to have done *what to whom* ... if a complaint uses 'either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom,' the Court will not speculate as to what acts a particular defendant is alleged to have committed." *New Mexico ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*, No. 09-CV-0178, 2009 WL 3672921, at *4 (D.N.M. Apr. 13, 2009) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) and dismissing claims against a defendant where complaint did not allege facts that could show that defendant was liable).

KIOSK has not done so. In its Complaint, KIOSK asserts five claims against Mr.

---

[7] It is true that some courts in this District have stated that "rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process." *Sticky.io,* 2021 WL 5508429, at *4 (quoting *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012). However, as in *Sticky.io* and similar cases, "Here, Plaintiff's trade secret claim falls into one of those 'extreme cases' where the Court recommends dismissal 'for lack of specificity on the pleadings.'" *Id.* Moreover, Defendants question the applicability of this argument in light of the Tenth Circuit's recent decision in *LS3 Inc.*, which postdates these decisions and affirms the propriety of dismissing threadbare trade secret claims at the outset of litigation.

Rasmussen, including breach of contract, DTSA violations, CUTSA violations, unfair competition, and breach of loyalty. *See* Compl., ¶¶ 73–81, 100–113, 114–124, 130–136, 137–144. Yet the Complaint is completely devoid of any specific allegation that Mr. Rasmussen engaged in conduct that could make him liable for those claims. The only allegations specific to Mr. Rasmussen relate to uncontroversial and unactionable facts such as Mr. Rasmussen's job responsibilities at KIOSK and other details related to his employment with and departure from KIOSK. *See* Compl. ¶¶ 17 (address), 34 (dates of employment & title), 35 & 68 (job responsibilities and information access), 36 & 74 (confidentiality agreement), 66–67 (Cole Kepro job offer & departure). By contrast, the Complaint's allegations of purported wrongdoing by Mr. Rasmussen are made with respect to the Defendants as a group, are extremely generic, and are asserted upon information and belief. *See, e.g.*, *id*. ¶ 79 ("On information and belief, Nebola, Lightsey, and Rasmussen breached the Confidentiality Agreement by disclosing to Cole Kepro and American Kiosks confidential and proprietary information belonging to KIOSK.").

These vague, speculative, and conclusory allegations do not suffice under the Federal Rules. *See, e.g.*, *EchoStar Satellite,* 2010 WL 1380314, at *1 (court need not accept "conclusory allegations"); *Iqbal*, 556 U.S. at 678 (allegations "merely consistent with" a defendant's liability, do not suffice). As such, the Court should dismiss all claims against Mr. Rasmussen and dismiss him as a party to this case entirely.

## III.   KIOSK fails to Plausibly State a Claim for Breach of the Employee Non-Solicitation Provisions.

KIOSK's allegations that Mr. Nebola and Mr. Lightsey violated the employee non-solicitation provisions in their Agreements fail, for at least two reasons.

*First*, as to Mr. Nebola and Mr. Lightsey's purported solicitation of Mr. Rasmussen, the text of Mr. Nebola and Mr. Lightsey's Agreements indicates that any non-solicitation obligations they may have had[8] expired a year after the contract was signed—which occurred before Mr. Rasmussen's departure. The Agreements state:

> Executive covenants and agrees that ***during a period of one (1) year*** Executive will not …
>
> Solicit or induce to leave the Company any person who Executive knows, or reasonably should know, is then an employee, consultant, or contractor of the Company or any of its Affiliates or who was an employee, consultant or contractor of the Company or any of its Affiliates (with respect to the Company's or any of its Affiliates business) at any time during the twelve-month period immediately preceding termination of Executive's employment with the Company….

Nebola Agreement [ECF No. 1-1] at 4; Lightsey Agreement [ECF No. 1-2] at 4 (emphasis added). Noticeably absent from the introductory provision that defines the obligation are words that state "during a period of one (1) year ***from the employee's departure from the Company***." While that might have been KIOSK's intent, the absence of these words or words of similar meaning are fatal.

Ambiguous employment agreements must be construed in the Employees' favor. Colorado law is clear that "any uncertainty in a contract prepared exclusively by the employer must be construed against the employer." *Kuta v. Joint Dist. No. 50(J) of Cntys. of Delta, Gunnison, Mesa & Montrose*, 799 P.2d 379, 382 (Colo. 1990); *see also, e.g.*, *Cheyenne Mtn. Sch. Dist. No. 12 v. Thompson*, 861 P.2d 711, 716 (Colo. 1993) (noting,

---

[8] Defendants respectfully reserve the right to assert that the Agreements are overbroad, contrary to public policy, and void under Colorado law once they have a more fulsome factual record at their disposal.

in employment dispute, "In case of doubt, a contract is construed most strongly against the drafter [the employer]."); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (applying canon and construing employee handbook against employer); *see generally Wells Fargo Ins. Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1104 (D. Colo. 2016) (noting "the fundamental policy of Colorado against covenants not to compete" and other restrictive covenants).

Mr. Nebola's Agreement states: "This Confidentiality, assignment agreement … is entered into as of **February 22, 2021** (the 'Effective Date')[.]" Nebola Agreement at 1 (emphasis added). Mr. Lightsey's Agreement states: "This Confidentiality, assignment agreement … is entered into as of **March 3, 2021** (the 'Effective Date')[.]" Lightsey Agreement at 1 (emphasis added).[9]

A very reasonable interpretation of this contractual language is that the Agreement's employee non-solicitation covenants took effect on the Effective Dates and lasted for one year. This meaning is reinforced by the fact that the employees' departure *does specifically trigger* other provisions in the Agreements. *See, e.g.*, Agreement at 2 (requiring return of confidential information "upon termination"); *id.* at 3 (requiring disclosure of inventions "within six (6) months after termination"). As the Tenth Circuit has explained, "[w]hen the drafters so clearly knew how to express one meaning, their failure to do so implies that the meaning was not intended." *Weight Loss Healthcare Centers of Am., Inc. v. Off. of Pers. Mgmt.*, 655 F.3d 1202, 1210 (10th Cir. 2011). Thus, the Court

---

[9] The Complaint incorrectly alleges the three Employee Agreements were "dated February 22, 2022." *See* Compl. ¶ 36; *but see* ECF No. 1-2 at 2 (listing the date of Mr. Lightsey's Agreement as March 3, 2022).

should not "read the dispositive paragraph as implicitly including language that the drafters explicitly included in adjacent paragraphs." *Id.* at 1209.

Thus, Mr. Nebola and Mr. Lightsey's employee non-solicitation obligations (if any) began on February 22, 2021 and March 3, 2021, lasted for "a period of one (1) year," and expired on February 22, 2022 and March 3, 2022, respectively. But by the Complaint's own allegations, Mr. Rasmussen did not receive an offer of employment from Cole Kepro until more than two months later, on May 18, 2022. Compl. ¶ 66. So by its own allegations, the Complaint fails to state a claim for breach of employee non-solicitation as to Mr. Rasmussen because the operative contractual provision had expired.

*Second*, all of KIOSK's claims of employee solicitation—i.e., that Mr. Nebola solicited Mr. Lightsey and that Mr. Nebola and Mr. Lightsey solicited Mr. Rasmussen—are impermissibly vague. The Complaint lacks any factual allegation that any of these men had any "direct[] or indirect[]" communication with each other about leaving KIOSK, let alone communication that would amount to "solicit[ing] or induc[ing]" one another to do so. *See* Nebola Agreement at 4; Lightsey Agreement at 4. Instead, the Complaint merely alleges a sequence of departures it views as consistent with solicitation, *see* Compl. ¶¶ 58 (Nebola), 59 (Lightsey), 66 (Rasmussen), and then asserts solicitation "on information and belief," *see, e.g.* Compl. ¶ 43 ("On information and belief …Nebola engaged in a scheme … to … poach KIOSK's employees"); *id.* ¶ 66 ("On information and belief, Rasmussen was recruited by Nebola and Lightsey[.]"). These allegations amount to no more than facts "merely consistent with [Defendant's] liability" that do not make a claim sufficiently plausible to survive dismissal. *See Iqbal*, 556 U.S. at 678.

**IV.      KIOSK's Claim for Breach of the Implied Covenant of Good Faith Fails.**

KIOSK's claim for breach the implied covenant of good faith and fair dealing should be dismissed for at least two reasons.[10]

*First*, KIOSK has not properly alleged the elements of this claim. The duty of good faith and fair dealing applies only when one party "has discretionary authority to determine certain terms of the contract." *Enriques v. Noffsinger Mfg. Co.*, *Inc.,* 412 F. Supp. 2d 1180, 1184–85 (D. Colo. 2006) (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493 (Colo. 1995)) (emphasis added). More specifically, "[t]he covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* "Discretion in performance occurs when the parties, at formation, defer a decision regarding performance terms of the contract leaving one party to set or control the terms of performance after formation." *Murray v. Crawford*, No. 08-cv-02045, 2009 WL 1837445 (D. Colo. June 26, 2009). For example, the implied covenant attaches "where the contract gives one party discretion in the performance or determination of a contractual provision, such as quantity, price, or time." *Wellness Walk In Tubs, LLC v. Scripps Media, Inc.*, 607 F. Supp. 3d 1167, 1172 (D. Colo. 2022).

Plaintiff does not allege any such discretion in the Agreements, which, Plaintiff claims categorically prohibit the Employees from disclosing confidential information, soliciting KIOSK employees, or soliciting KIOSK clients or vendors. *See* Compl. ¶¶ 74–

---

[10] In addition, "in Colorado, there exists no claim for breach of the implied covenant of good faith and fair dealing for at-will employment contracts." *Lawson v. Heartland Payment Sys., LLC*, 548 F. Supp. 3d 1085, 1096 (D. Colo. 2020) (dismissing claim and citing cases).

75 (citing Agreement at 2–3). The Complaint's only attempt to identify a discretionary provision in the Agreements is the allegation that Mr. Nebola and Mr. Lightsey had "considerable discretion with respect to their performance under the Confidentiality Agreement" because it "entrust[ed] Nebola and Lightsey with all aspects of their continued employment with KIOSK." *Id*. ¶ 85. This allegation appears to be a reference to the Agreement's assertion that, "Executive's … continued employment with the Company depends on … Executive's willingness to agree to and abide by the non-disclosure and other covenants contained in this Agreement." Agreement at 1. But the fact that KIOSK threatened to fire the Employees if they did not sign does not suggest, let alone demonstrate meaningful discretion in the performance of the Agreement's terms. And, regardless, this provision itself points back to the Agreements' mandatory non-disclosure and confidentiality provisions. This does not amount to a provision affording either party discretion as to "the manner of performance *under a specific contract term*." *Enriques*, 412 F. Supp. 2d at 1184–85 (emphasis added). As such, this claim fails. *See Kaspryzk v. PNC Bank, Nat. Ass'n*, No. 13-cv-00247, 2013 WL 3895069 at * 6–7 (D. Colo. July 29, 2013) (recommending dismissal of the breach of duty of good faith claim because the term at issue was "not a term relating to the manner of performance of the contract").[11]

    *Second,* if the Court does not dismiss KIOSK's breach of contract claim, then the

---

[11] *See also Jaeger v. HSBC Bank USA, N.A.*, No. 12-cv-01736, 2013 WL 1060901 at *4 (D. Colo. Mar. 14, 2013) (dismissing where complaint did not show that defendants had discretionary authority under the terms of the contract); *Young v. Wachovia Mortg. Co.*, No. 11-cv-01963, 2011 WL 6934110 (D. Colo. 2011) (dismissing because plaintiffs "merely restate[d] the allegations made in the Complaint without pointing to any discretionary terms in a contract that would support their [good faith] claim").

claim for breach of the implied covenant should also be dismissed because it is duplicative of KIOSK's breach of contract claim. A "plaintiff can maintain its claim for breach of the implied covenant of good faith and fair dealing *only if* it is based on allegations different than those underlying the accompanying breach of contract claim." *Armata v. Certain Underwriters at Lloyd's London – Syndicate 1861*, No. 21-cv-00160, 2022 WL 3227619, at *8 (D. Colo. Aug. 10, 2022) (emphasis in original, internal quotations omitted); *Aurora Com. Corp. v. PMAC Lending Servs., Inc.*, No. 13-cv-00497, 2014 WL 859253 (D. Colo. Mar. 5, 2014). Here, KIOSK alleges that Mr. Nebola and Mr. Lightsey breached the implied covenant by "act[ing] dishonestly … including by—while still employed at KIOSK—actively working to draw business and employees away from KIOSK for the benefit of Cole Kepro and American Kiosks." Compl. ¶ 86. But that is *precisely the same* purported misconduct underlying KIOSK's breach of contract claim. *See id.* ¶¶ 76–78 (alleging solicitation of KIOSK customers and employees). Thus, the Court should dismiss KIOSK's good faith claim for multiple reasons.

**V.     KIOSK's Intentional Interference with Contract Claim Fails Because It Does Not Adequately Plead Cole Kepro's Knowledge.**

KIOSK's claim for intentional interference with contract fails because it does not plead facts to support the first element of such a claim: that "the defendant 'was aware of the existence of the contract.'" *See Evans v. Maytag Aircraft Corp.*, No. 16-cv-02264, 2017 WL 1437296, at *9 (D. Colo. Mar. 14, 2017) (listing elements and quoting *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009)).

The only statement in the Complaint as to this element is the conclusory recitation that "Cole Kepro [] was or should have been aware of Nebola and Lightsey's

Confidentiality Agreement, and their obligations thereunder." Compl. ¶ 92. But there are no factual allegations anywhere in the Complaint to substantiate that conclusion, making the pleading of this critical element a mere "formulaic" and deficient "recitation of the elements." *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868, 2013 WL 1231908 at *3–4, *5–7 (D. Colo. Feb. 25, 2013) ("At many places in the counterclaims, [plaintiff] asserts that [defendant] 'knew or should have known' certain things[.] … **Iqbal specifically holds that such statements about what was 'known' are bare assertions 'amount[ing] to nothing more than a 'formulaic recitation of the elements' of the claim asserted**.'") (emphasis added, quoting *Iqbal*, 556 U.S. at 681); *see also Louisiana Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc.*, No. 19-12948, 2021 WL 3471159 at *16 (E.D. La. Aug. 6, 2021) (contributory trademark infringement claim failed because unsupported allegation defendant "knew or should have known" infringer's intent was "conclusory at best"). This claim should be dismissed.

VI.     **KIOSK Fails to State a Claim for Unfair Competition Because It Does Not Allege that Defendants' Conduct Is Likely to Confuse the Public.**

KIOSK's claim common law unfair competition fails because it does not to allege that Defendants' conduct is likely to confuse the public. In Colorado, "the tort of unfair competition requires, first, that the defendant has copied the plaintiff's products or services or misappropriated plaintiff's name *or* operations in some regard, *and* second, *that this conduct is likely to deceive or confuse the public* because of the difficulties in distinguishing between the plaintiff's and defendant's products and services." *L-3 Commc'ns*, 2013 WL 1231908 at *8 (emphasis added) (quoting *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007); *Gates Corp. v. Dorman Products, Inc.*, No.

09-cv-02058, 2009 WL 5126556, at *5 (D. Colo. Dec. 18, 2009). The Complaint makes no attempt to allege that Cole Kepro's product is likely to deceive or confuse the public. *See* Compl. ¶ 133. This claim should be dismissed.

## VII. The Economic Loss Rule Bars Many of KIOSK's Claims Against the Employees.

If the Court does not dismiss the breach of contract claims, the economic loss rule bars KIOSK's claims against the Employees for (1) tortious interference with prospective business advantage, (2) unfair competition, (3) breach of duty of loyalty, and (4) breach of fiduciary duty. Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000) (en banc). "The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached." *Id.* Courts in Colorado have rejected all of the at-issue claims under the economic loss rule:

- Tortious interference with prospective business advantage. *See Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1139 (D. Colo. 2018) (rejecting tortious interference claim against former employee, reasoning "Here, the Employment Agreement between GAO and Mr. Kent imposes upon Mr. Kent the same duty to not interfere with GAO's current or prospective customers as the duty underlying the tort for interference with business contracts.").

- Common law duty of loyalty. *See 23 Ltd. v. Lessing*, No. 2015CV31187, 2016 WL 11507259, at *3 (Denver Dist. Ct. Jan. 21, 2016) (rejecting duty of loyalty claim, reasoning that employee's "common law duty of loyalty, while arising

independently from the contract, is so 'inextricably intertwined' with the contract that it is barred by the economic loss rule").

- Breach of fiduciary duty. *See Micale v. Bank One, N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1221-22 (D. Colo. 2005) (dismissing breach of fiduciary duty claim as duplicative of breach of contract claim).

Here, KIOSK alleges that the Employees were subject to Agreements prohibiting them from (1) abusing confidential information, (2) soliciting KIOSK employees, or (3) soliciting KIOSK customers or vendors. *See* Compl. ¶¶ 74–75; *see generally* Agreements at 2, 4. As shown in **Exhibit A**, these purported contractual obligations are identical to those purportedly underlying KIOSK's tort claims against the Employees. Therefore, to the extent the contractual claims survive motion to dismiss, the above tort claims should be dismissed under the economic loss rule.

## VIII.   KIOSK's Unjust Enrichment Claim Against the Employees Is Duplicative.

Finally, KIOSK's claim for unjust enrichment claim against Mr. Nebola and Mr. Lightsey is fatally duplicative. In Colorado, "a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Interbank Inv., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003); *Printz Servs. Corp. v. Main Elec., Ltd.,* 949 P.2d 77 (Colo. App. 1997), *aff'd in part and rev'd in part,* 980 P.2d 522 (Colo. 1999). KIOSK's unjust enrichment claim alleges that Defendants have been unjustly enriched by receipt of (1) KIOSK's confidential information and (2) business opportunities. Compl. ¶¶ 126–129. Those are the same allegations underlying

KIOSK's breach of contract claim. *See* Compl. ¶ 79 (alleging disclosure of confidential information to Cole Kepro); *id.* ¶ 76 (alleging diversion of business opportunities). Thus, here again, to the extent the breach of contract claims survive, the unjust enrichment count against Mr. Nebola and Mr. Lightsey should be dismissed. *See Pernick v. Computershare Tr. Co., Inc.*, 136 F. Supp. 3d 1247, 1267–68 (D. Colo. 2015) (rejecting unjust enrichment claim on motion to dismiss because "the conduct giving rise to plaintiff's unjust enrichment claim is covered by the Agreement").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the following claims: (1) the DTSA and CUTSA claims (Counts V & VI); (2) the breach of contract claim alleging misuse of confidential information (Count I); (3) all claims against Mr. Rasmussen (Counts I, V, VI, VIII, & IX); (4) the breach of contract claim alleging improper solicitation of Mr. Rasmussen (Count I); (5) the breach of good faith and fair dealing claim (Count II); (6) tortious interference with contract (Count III); and (7) unfair competition (Count VIII).

In addition, to the extent the Court does not dismiss the breach of contract claims, it should dismiss KIOSK's claims against the Employees for (8) tortious interference with prospective business advantage (Count IV); (9) unfair competition (Count VIII); (10) breach of duty of loyalty (Count IX), (11) breach of fiduciary duty (Count X), and (12) unjust enrichment (Count VII).

Dated: March 15, 2023

Respectfully Submitted,

*/s/  Charles W. Steese*
Charles W. Steese
Alec P. Harris
Michael Xavier
ARMSTRONG TEASDALE LLP
4643 S. Ulster Street, Suite 800
Denver, CO  80237
(720) 200-0676
aharris@atllp.com
csteese@atllp.com
mxavier@atllp.com

*Attorneys for Defendants Cole Kepro International, LLC d/b/a American Kiosks, Eric Nebola, Taylor Lightsey, and Michael Rasmussen*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2023, a true and correct copy of the foregoing was transmitted to counsel for Plaintiff using the CM/ECF system which will send notification of such filing to counsel for Plaintiff as follows:

David J. Tsai
John Steger
Natalie Truong
david.tsai@pillsburylaw.com
john.steger@pillsburylaw.com
natalie.truong@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1000

*Attorneys for Plaintiff Kiosk Information Systems, Inc.*

*/s/ Charles W. Steese*