**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00352-RMR-KLM

KIOSK INFORMATION SYSTEMS, INC.,

                Plaintiff,

     vs.

COLE KEPRO INTERNATIONAL, LLC;
AMERICAN KIOSKS; ERIC NEBOLA;
TAYLOR LIGHTSEY; and MICHAEL RASMUSSEN,

               Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL
MOTION TO DISMISS**

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT ................................................................................................................. 5

      A.     KIOSK Has Sufficiently Identified the Trade Secret and Confidential Information Defendants Misappropriated. .................................................... 5

      B.     KIOSK's Complaint Adequately Pleads Claims Against Rasmussen ......... 9

      C.     KIOSK's Complaint Adequately Pleads Breach of the Non-Solicitation Provisions of the Confidentiality Agreements ........................................... 10

      D.     KIOSK's Complaint Adequately Pleads Breach of Implied Covenant of Good Faith and Fair Dealing. ................................................................ 12

      E.     KIOSK's Complaint Adequately Pleads Facts Showing that Cole Kepro Had Knowledge of the Contracts at Issue. ............................ 14

      F.     KIOSK's Complaint Adequately Pleads Common Law Unfair Competition ................................................................................................ 15

      G.     Defendants' Economic Loss Rule Argument Fails at this Early Stage of Litigation. .................................................................................... 15

      H.     KIOSK's Unjust Enrichment Claim Should Not be Dismissed at this Early Stage of Litigation. ................................................................... 16

CONCLUSION ............................................................................................................ 17

4883-3611-4007

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Aaron H. Fleck Revocable Tr. through Fleck v. First W. Tr. Bank*,
No. 21-CV-01073-CMA-GPG, 2022 WL 872633 (D. Colo. Mar. 23, 2022) ............... 16

*Amoco Oil Co. v. Ervin*,
908 P.2d 493 (Colo. 1995) .................................................................................... 12, 13

*Arctic Energy Servs., LLC v. Neal*,
No. 18-cv-00108-PAB-KLM, 2018 WL 1010939 (D. Colo. Feb. 22, 2018) .................. 6

*Armata v. Certain Underwriters at Lloyd's London Syndicate 1861*,
No. 21-CV-00160-NYW, 2022 WL 3227619 (D. Colo. Aug. 10, 2022) ..................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 1, 5

*Aurora Com. Corp. v. PMAC Lending Servs., Inc.*,
No. 13-CV-00497-LTB, 2014 WL 859253 (D. Colo. Mar. 5, 2014) ........................... 13

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 1, 5

*DTC Energy Grp., Inc. v. Hirschfeld*,
420 F. Supp. 3d 1163 (D. Colo. 2019) ......................................................................... 6

*EnCana Oil & Gas (USA), Inc. v. Miller*,
405 P.3d 488 (Colo. App. 2017) ................................................................................. 12

*Fed. Deposit Ins. Corp. v. Fisher*,
292 P.3d 934 (Colo. App. 213) .................................................................................. 11

*Hallett v. Stuart Dean Co.*,
481 F. Supp. 3d 294 (S.D.N.Y. 2020) ......................................................................... 14

*Hauschild GMBH & CO. KG v. FlackTek, Inc.*,
No. 20-CV-02532-PAB-STV, 2022 WL 392501 (D. Colo. Feb. 9, 2022) ..................... 7

*Hemmann Mgmt. Servs. v. Mediacell, Inc.*,
176 P.3d 856 (Colo. App. 2007) ................................................................................. 17

*International Academy of Business and Financial Management, Ltd. v. Menz*,
No. 12-CV-00463-CMA-BNB, 2013 WL 212640 (D. Colo. Jan. 18, 2013) .................. 7

ii

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008).................................................................. 9, 10

*SBM Site Servs., LLC v. Garrett*,
  No. 10-CV00385-WJM-BNB, 2012 WL 628619 (D. Colo. Feb. 27, 2012)................... 6

*Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*,
  887 F.3d 1003 (10th Cir. 2018).................................................................. 16

*Sticky.io v. Martingale Software, LLC*,
  No. 21-CV-00664-RM-STV, 2021 WL 5508429 (D. Colo. Oct. 27, 2021)................... 7

*Swan Glob. Invs., LLC v. Young*,
  No. 18-CV-03124-CMA-NRN, 2020 WL 897654 (D. Colo. Feb. 25, 2020) ............... 16

*U.S. Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*,
  842 P.2d 208 (Colo.1992)......................................................................... 11

*Ute Water Conservancy Dist. v. Fontanari*,
  524 P.3d 308 (Colo. App. 2022) ............................................................... 11

**Statutes and Codes**

18 U.S.C. § 1836(b)(1) ............................................................................... 6

18 U.S.C. § 1839......................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 1, 5

Fed. R. Civ. P. 15 ..................................................................................... 17

4883-3611-4007

**INTRODUCTION**

Defendants move to partially dismiss this action on the grounds that Plaintiff

KIOSK Information Systems, Inc. ("KIOSK") has failed to state a claim.  None of

Defendants' arguments have merit, and their motion should be denied.  It is black letter

law that a complaint survives a motion to dismiss under Rule12(b)(6) if, taking all well-

pleaded factual allegations as true, the complaint "state[s] a claim to relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this early stage of litigation, KIOSK

has sufficiently pled allegations of Defendants' wrongful conduct.

*First*, the Complaint sufficiently alleges the confidential and trade secret

information Defendants misappropriated.  The Complaint specifically lists the

confidential and trade secret information to which each defendant had access

(Complaint, ¶¶ 31, 33, 35), and specifically alleges that defendants disclosed or used

that information.  (*See, e.g.*, Complaint, ¶ 108.)

*Second*, the Complaint specifically alleges wrongful conduct against Defendant

Michael Rasmussen ("Rasmussen").  KIOSK's Complaint specifically alleges that

Rasmussen "breached the Confidentiality Agreement by disclosing to Cole Kepro and

American Kiosks confidential and proprietary information belonging to KIOSK."

(Complaint, ¶ 79.)  That this same wrongful conduct was alleged against other

defendants in no way obscures what is specifically alleged against Rasmussen.

*Third*, KIOSK's breach of contract claim should not be dismissed.  Based on the

clear intention of the parties, the Non-Solicitation provisions of the Confidentiality

1

Agreements were in force when defendants Eric Nebola and Taylor "Tucker" Lightsey solicited Mr. Rasmussen.

*Fourth*, KIOSK's claim for breach of the implied covenant of good faith and fair dealing should not be dismissed, as KIOSK sufficiently pled that the former employee defendants had discretion in their performance, and because the Defendants' argument that this claim is duplicative is premature.

*Fifth*, KIOSK has adequately alleged that Cole Kepro and American Kiosks had knowledge of the Confidentiality Agreements.  (*See* Complaint, ¶ 7 ("KIOSK warned Nebola, Lightsey, and Cole Kepro's / American Kiosks' attorneys of their continuing obligations to KIOSK."))

*Sixth*, KIOSK's claim for unfair competition should not be dismissed given that KIOSK has sufficiently alleged the likelihood of consumer confusion.

*Seventh*, Defendants' motion to dismiss KIOSK's claims on the basis of the economic loss rule is premature.

*Finally*, for the same reasons, Defendants' argument that KIOSK's unjust enrichment claim is duplicative is likewise premature.

## **BACKGROUND**

KIOSK, based in Colorado, leads the industry in the design and manufacture of self-service solutions, including self-service kiosk machines.  (Complaint, ¶ 3.) Defendants Eric Nebola ("Nebola"), Taylor "Tucker" Lightsey ("Lightsey"), and Michael Rasmussen ("Rasmussen") are each former KIOSK employees.  (*Id.*)  Nebola was KIOSK's Vice President of Sales (having worked at KIOSK for over 18 years).  Lightsey

2

was KIOSK's Director of Product Management (having worked at KIOSK for nearly 14 years).  And Rasmussen was KIOSK's Prototype System Manager (having worked at KIOSK for nearly 24 years).  (*Id.*, ¶¶ 30, 32, and 34.)

Because of their key roles at KIOSK, Nebola, Lightsey, and Rasmussen had access to KIOSK's valuable confidential, proprietary, and trade secret information.  (*Id.*, ¶¶ 31, 33, and 35.)  Nebola, Lightsey, and Rasmussen each agreed to and entered into an Executive Confidentiality Assignment Agreement with KIOSK ("Confidentiality Agreement"), which expressly prohibits each from disclosing KIOSK's confidential, proprietary, and trade secret information, and further prohibits each from soliciting or diverting KIOSK's customers, suppliers, or employees.  (*Id.*, ¶ 36.)  As detailed in the Complaint, the confidential, proprietary, and trade secret information to which they had access throughout their employment includes, but is not limited to, customer lists, confidential information about KIOSK's customer database, customer agreements, customers' historical purchasing preferences, customers' key contact information, pricing, quotes, customers' business and technical needs and preferences, customers' service history, as well as confidential, proprietary, and trade secret information regarding KIOSK's product designs, engineering files (*e.g.*, CAD files), sales prospects, product plans, future product development initiatives, actual and planned product technical specifications, pricing and marketing strategy, cost/profit margins, bills of materials ("BOMs"), and component suppliers.  (*Id.*, ¶¶ 24, 31, 33, 35, 101, 114.)

Defendant American Kiosks is a subsidiary of Defendant Cole Kepro International, LLC ("Cole Kepro"), and directly competes with KIOSK in the kiosk

3

market.  (*Id.*, ¶¶ 2, 14, 60.)  Nebola began taking meetings with Cole Kepro as early as August of 2021 to discuss employment opportunities with a company that would become American Kiosks.  (*Id.*, ¶ 44.)  At this time, Nebola was still serving as KIOSK's Vice President of Sales and was regularly meeting with clients.  (*Id.*, ¶ 43.)  One such client was Bitcoin of America ("BOA"), which by October of 2021 had stated its intent of purchasing 1,000 kiosks from KIOSK.  (*Id.*, ¶ 43, 49, 55.)

Knowing from his interactions with BOA that it intended to make a purchase from KIOSK, Nebola worked with Lightsey to divert BOA's business away from KIOSK and toward Cole Kepro.  Specifically, as alleged in the Complaint, on October 7, 2021, Nebola emailed BOA's Chief Operating Officer and asked her to call him as soon as possible.  (*Id.*, ¶ 52.)  The Complaint alleges that on information and belief, Nebola informed BOA that he and Lightsey were leaving KIOSK to join a competitor, and that BOA should refrain from doing business with KIOSK.  (*Id.*, ¶ 57.)  Four days later, Nebola resigned from KIOSK, and Lightsey resigned five days after that.  (*Id.*, ¶¶ 58, 59.)

Shortly after they resigned, Nebola and Lightsey began working for Cole Kepro (based in Nevada) and founded American Kiosks only a few miles from KIOSK's offices in Colorado.  (*Id.*, ¶¶ 6, 60.)  Nebola became the President of American Kiosks with Lightsey serving as Vice President of American Kiosks.  (*Id.*, ¶ 6.)  On information and belief, in May of 2022, Nebola and Lightsey recruited Rasmussen to join American Kiosks.  (*Id.*, ¶ 66.)  The Complaint alleges that Defendants used KIOSK's confidential, proprietary, and trade secret information to immediately secure a contract with BOA for

4

American Kiosks and produced—in just a few months after the formation of American Kiosks—a BOA kiosk strikingly similar to a kiosk designed by KIOSK. (*Id.*, ¶¶ 69, 70.)

## LEGAL STANDARD

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Complaint must contain factual allegations that, when assumed to be true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In other words, the Complaint must include "enough facts to state a claim for relief that is plausible on its face." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). When determining whether the Complaint contains sufficient factual allegations, the Court must accept all factual allegations in the Complaint as true, "even if doubtful in fact, and must construe the allegations in the light most favorable to claimant." *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

## ARGUMENT

**A.  KIOSK Has Sufficiently Identified the Trade Secret and Confidential Information Defendants Misappropriated.**

A plaintiff asserting a DTSA or CUTSA claim must establish: "(1) the existence of a trade secret. . .; (2) the acquisition of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means." *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1175 (D. Colo.

4883-3611-4007

2019) (quoting *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018)); *see also* 18 U.S.C. § 1836(b)(1); 18 U.S.C. § 1839. KIOSK has sufficiently pled each of these elements in its Complaint.

Defendants argue that KIOSK's trade secret claims should be dismissed because they believe KIOSK has failed to identify with particularity the trade secrets Defendants have misappropriated. To the contrary, KIOSK details the types of trade secret information each defendant had in paragraphs 31, 33, and 35 of the Complaint. For example, the Complaint states that Nebola had access to "confidential information about KIOSK's customer database, customer agreements, customers' historical purchasing preferences, customers' key contact information, pricing, quotes, customers' business and technical needs and preferences, customers' service history . . . KIOSK's product designs, engineering files (*e.g.*, CAD files), sales prospects, product plans, future product development initiates, actual and planned product technical specifications, pricing and marketing strategy, cost/profit margins bills of materials ("BOMs"), and component suppliers." (Complaint, ¶ 31.)

As an initial matter, "cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process." *SBM Site Servs., LLC v. Garrett*, No. 10-CV00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012). Courts only dismiss a trade secret claim for lack of specificity on the pleadings "**in the most extreme cases**." *Id.* (emphasis added). That is not the case here. In their motion, Defendants rely on *Hauschild GMBH & CO. KG v. FlackTek, Inc.* (Motion, at 8.) In *Hauschild*, the Court dismissed a trade secret claim for lack of specificity where

6

defendants alleged only that plaintiffs had misappropriated "information regarding potential and actual [] customers and vendors." *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-CV-02532-PAB-STV, 2022 WL 392501, at *9 (D. Colo. Feb. 9, 2022).

Unlike the vague "trade secrets" alleged in *Hauschild*, KIOSK has identified its trade secrets with sufficient specificity to survive Defendants' motion to dismiss.  The court in *Hauschild* explains in its dismissal: "it is not clear whether plaintiff is referring to customer and vendor lists, preferences, order histories, pricing strategies, terms of contracts, or something else."  *Id.* at *10.  Conversely, KIOSK specifically lays out what it is claiming as trade secrets, including several of the exact categories mentioned by the Court in *Hauschild*.  (*See* Complaint, ¶ 24 (alleging as trade secrets KIOSK's "customer list," its customers' "pricing and historical purchasing information," and its customers' customized solutions based on their "preferences").)

The other two cases Defendants cites are similarly outliers.  In *Sticky.io v. Martingale Software, LLC*, the Court dismissed the plaintiff's trade secret claim, which alleged as its trade secret "proprietary and superior technology that separates and maintains a distinction between merchants and their competitors."  No. 21-CV-00664-RM-STV, 2021 WL 5508429, at *4 (D. Colo. Oct. 27, 2021).  Similarly, in *International Academy of Business and Financial Management, Ltd. v. Menz*, the Court dismissed a trade secret claim which alleged as a trade secret the vague and undefined term "trading information."  No. 12-CV-00463-CMA-BNB, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013).

4883-3611-4007

These examples of vaguely pleaded confidential information and trade secrets stand in contrast with KIOSK's multiple descriptions of its trade secrets throughout its Complaint.  In addition to the list provided at paragraph 24 of its Complaint, KIOSK makes further reference to its specific trade secrets at paragraphs 31, 33, 35, 101, and 114.  For example, KIOSK lists as trade secrets its "engineering files (*e.g.*, CAD Files)," "bills of material," "component suppliers," "pricing and marketing strategy," "cost/profit margins," and "product configuration."  (Complaint, ¶¶ 31, 33, and 35.)  These specific trade secrets identified in the Complaint will indeed be produced during discovery under the highest confidentiality designation afforded by the Protective Order entered in this case.

In addition to Defendants' argument that KIOSK has failed to plead cognizable trade secrets, Defendants also argue that KIOSK's Complaint does not adequately allege what trade secret or confidential information Defendants misappropriated.  This argument also fails.  In its Complaint, KIOSK lists the specific trade secrets and confidential information to which Nebola, Lightsey, and Rasmussen each had access. (Complaint, ¶¶ 31, 33, and 35.)  The Complaint also alleges that each of the three former employees "breached the Confidentiality Agreement by disclosing to Cole Kepro and American Kiosks confidential and proprietary information belonging to KIOSK," and "disclosed and/or used KIOSK's trade secrets without its consent, including by disclosing and/or using KIOSK's trade secrets for the benefit of Cole Kepro and American Kiosks."  (Complaint, ¶¶ 79 and 109.)

4883-3611-4007

Read in the light most favorable to KIOSK, KIOSK's Complaint alleges that the Defendants disclosed the specific trade secrets and confidential information which was available to each of them—as specified in paragraphs 31, 33, and 35 of the Complaint. Again, these specific trade secrets and confidential information identified in the Complaint will be produced during the course of discovery under the highest confidentiality designation afforded by the Protective Order for this case.

**B.    KIOSK's Complaint Adequately Pleads Claims Against Rasmussen.**

Defendants next contend that KIOSK has not alleged wrongdoing by Rasmussen. The crux of Defendants' argument appears to be that, because the wrongful acts alleged against Rasmussen were also alleged against other Defendants, the claims against Rasmussen must be dismissed.  Defendants rely on the Tenth Circuit's holding in *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

In *Robbins,* multiple allegations were made against multiple defendants in a single paragraph.  *See id.*, at 1250 ("[T]he complaint alleges that Defendants ... instruct[ed] the Plaintiffs to place Renee Dawn Robbins in a specific Daycare; . . . assert[ed] control over such Daycare; . . .failed to protect and supervise the child.") (internal quotations omitted).  The Court in *Robbins* explained:

> Presumably, the allegedly tortious acts committed by Mr. Hendrick as the Director of DHS, Ms. McKinney as the private owner and operator of the daycare where Renee was killed, and the individual social workers in Tahlequah, are entirely different in character and therefore are mistakenly grouped in a single allegation.

*Robbins*, 519 F.3d at 1250.

*Robbins* is inapposite.  KIOSK's Complaint specifically alleges that Rasmussen "breached the Confidentiality Agreement by disclosing to Cole Kepro and American Kiosks confidential and proprietary information belonging to KIOSK."  (Complaint, ¶ 79.) KIOSK also alleges that Rasmussen disclosed and/or used KIOSK's trade secrets without its consent. (Complaint, ¶¶ 108, 120.)  The fact that the same wrongful act was alleged against multiple defendants in the same paragraph does nothing to obscure what is being alleged against Rasmussen.

Unlike in *Robbins*, the allegations of Rasmussen's wrongdoing are not "mistakenly grouped" with the wrongdoing of the other Defendants.  Rather, KIOSK's Complaint groups Rasmussen with other Defendants when each of the Defendants committed the specific wrongful acts alleged.  KIOSK's Complaint makes perfectly clear the wrongful acts Rasmussen is alleged to have committed—including, but not limited to, his misappropriation of trade secrets he specifically had access to during his nearly 24 years at KIOSK.  Therefore, the Complaint should not be dismissed as to defendant Rasmussen.

C.    **KIOSK's Complaint Adequately Pleads Breach of the Non-Solicitation Provisions of the Confidentiality Agreements.**

Defendants' argument that Nebola and Lightsey were not bound by their individual Confidentiality Agreements' Non-Solicitation provisions when they solicited Rasmussen is based on a strained interpretation of the Confidentiality Agreements. The non-solicitation provision states (emphasis added):

> Executive covenants and agrees that during a period of one (1) year Executive will not…

10

4883-3611-4007

Solicit or induce to leave the Company any person who Executive knows, or reasonably should know, is then an employee, consultant, or contractor of the Company or any of its Affiliates or who was an employee, consultant, or contractor of the Company or any of its Affiliates (with respect to the Company's or any of its Affiliates business) at any time during the twelve-month period immediately preceding **termination of Executive's employment with the Company**."

It is clear when the Confidentiality Agreement is read as a whole that the parties intended for the non-solicitation provision to continue to run for a year after the executives' employment terminated.  *See Fed. Deposit Ins. Corp. v. Fisher*, 292 P.3d 934, 937 (Colo. App. 213) (quoting *U.S. Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.,* 842 P.2d 208, 213 (Colo.1992) ("The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation.").

Defendants contend that the non-solicitation provision was intended to run only for one-year after the Confidentiality Agreement was signed.  That interpretation is not supported by either the language of the contract or the parties' intent.  *See, e.g., Ute Water Conservancy Dist. v. Fontanari*, 524 P.3d 308, 316 (Colo. App. 2022) ("The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties.").  The point of a non-solicitation provision like the one contained in the Defendants' employment agreements is to prevent a former employee from soliciting employees or customers to a new employer both during the course of the employment and for a period of time after it ends.

Based on Defendants' interpretation of the non-solicitation clause, KIOSK's executives would be free to solicit and divert employees and customers from KIOSK while still employed by KIOSK, provided that a year had elapsed from when the executives signed the Confidentiality Agreement.  Clearly this was not the parties'

11

intent, as such an interpretation would yield an absurd result.  *See EnCana Oil & Gas (USA), Inc. v. Miller*, 405 P.3d 488, 496 (Colo. App. 2017) (stating that a "contract should never be interpreted to yield an absurd result") (internal quotations omitted).

Further, KIOSK has sufficiently pled breach of the non-solicitation provisions of the Confidentiality Agreements.  KIOSK's Complaint alleges: "Nebola further breached the Confidentiality Agreement by soliciting Lightsey to leave his employment with KIOSK," and "Nebola and Lightsey further breached the Confidentiality Agreement by soliciting Rasmussen to leave his employment with KIOSK."  (Complaint, ¶¶ 77-78.) This is all that KIOSK is required to allege at the pleading stage, where the Court must accept all factual allegations in the Complaint as true.

D.   **KIOSK's Complaint Adequately Pleads Breach of Implied Covenant of Good Faith and Fair Dealing.**

Defendants first argue that KIOSK's claim for breach of the duty of good faith and fair dealing should be dismissed because KIOSK has not alleged any discretionary authority by Nebola and Lightsey, citing *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) ("The concept of discretion in performance refers to one party's power after contract formation to set or control the terms of performance.") (internal quotations omitted).

Here, Nebola and Lightsey necessarily had discretion under the terms of the agreements they had with KIOSK.  As executives, they had wide latitude in decision making regarding how they had access to KIOSK's trade secrets and confidential information.  For example, Nebola and Lightsey had discretion regarding what information to disclose to whom and under what circumstances.  (Complaint, ¶ 85.)

However, the Complaint alleges that Nebola and Lightsey used this discretion by disclosing this information to KIOSK's competitor—American Kiosks and Cole Kepro. (Complaint, ¶ 86.)  This is sufficient.  *See Amoco*, 908 P.2d at 498. ("[G]ood faith performance of a contract involves faithfulness to an agreed common purpose and consistency with the justified expectations of the other party") (internal quotations omitted).

Defendants' argument that KIOSK's breach of the covenant of good faith and fair dealing is duplicative also fails.  As an initial matter, the only authority cited by Defendants for their proposition that KIOSK's claim should be dismissed is based on New York law—not Colorado law.  *See Aurora Com. Corp. v. PMAC Lending Servs., Inc.*, No. 13-CV-00497-LTB, 2014 WL 859253, at *5 (D. Colo. Mar. 5, 2014) ("I dismiss Plaintiff's Good Faith and Fair Dealing Claim **under New York Law.**") (emphasis added); *Armata v. Certain Underwriters at Lloyd's London Syndicate 1861*, No. 21-CV-00160-NYW, 2022 WL 3227619, at *8 (D. Colo. Aug. 10, 2022) ("Plaintiffs' bad faith claims should be dismissed **under New York law** on the grounds that **New York law precludes a bad faith claim that is duplicative of a breach of contract claim.**") (emphasis added).  Defendants fail to cite any cases applying Colorado law.

Further, the scope and interpretation of the Confidentiality Agreement is in dispute, and Defendants' have explicitly reserved the right to argue that the Confidentiality Agreements are void under Colorado Law.  (Motion, at 13, n.8.)  Should KIOSK's breach of contract claim ultimately fail with respect to one of the provisions of the Confidentiality Agreement, KIOSK's breach of the implied covenant of good faith

13

claim would no longer be duplicative.  Until these issues are thoroughly addressed during litigation, it is premature for the Court to determine whether KIOSK's claim is duplicative at the pleading stage.  Consequently, KIOSK's claim should not be dismissed.  *See Hallett v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 306 (S.D.N.Y. 2020) (denying defendant's motion to dismiss plaintiff's allegedly duplicative breach of the implied covenant of good faith claim "[b]ecause Hallett has plausibly alleged that he could recover on his claim for breach of the implied covenant, even were he to fail on Count One [breach of contract], [thus] the claims are not coextensive").

E.    **KIOSK's Complaint Adequately Pleads Facts Showing that Cole Kepro Had Knowledge of the Contracts at Issue.**

Defendants next argue that KIOSK's intentional interference with contract claim fails because it does not adequately plead Cole Kepro's knowledge.  (Motion, at 18.) KIOSK's Complaint alleges that "Cole Kepro [] was or should have been aware of Nebola and Lightsey's Confidentiality Agreement, and their obligations thereunder." (Complaint, ¶ 92.)  Defendants argue that there are "no factual allegations anywhere in the Complaint to substantiate that conclusion."  (Motion, at 19.)

But the Complaint does indeed contain such allegations.  For example, KIOSK's Complaint states: "After Nebola and Lightsey's departure from KIOSK, KIOSK warned Nebola, Lightsey, and **Cole Kepro's / American Kiosks' attorneys of their continuing obligations to KIOSK**."  (Complaint, ¶ 7) (emphasis added.)  KIOSK's Complaint further alleges: "KIOSK . . . **expressed its concern to Cole Kepro / American Kiosks** regarding Nebola, Lightsey, and Rasmussen's taking of KIOSK's trade secrets and confidential and proprietary information.  (Complaint, ¶ 9) (emphasis

14

added.)  When read in the light most favorable to KIOSK, these paragraphs allege specific facts to show that Cole Kepro was or should have been aware of Nebola and Lightsey's Confidentiality Agreement, and their obligations thereunder.  Accordingly, KIOSK's claim for tortious interference should be allowed to proceed.

F.     **KIOSK's Complaint Adequately Pleads Common Law Unfair Competition.**

Defendants next argue that KIOSK's common law unfair competition claim does not allege that the Defendants' conduct is likely to confuse the public.  When construed in the light most favorable to KIOSK, KIOSK's unfair competition claim makes multiple such allegations.

First, the Complaint alleges that "Defendants used KIOSK's confidential, proprietary, and trade secret information to design . . . **a kiosk that was strikingly similar to that designed by KIOSK"** which placed "components in **a nearly identical configuration as that of the KIOSK design.**"  (Complaint, ¶ 133; *see also* Complaint, ¶ 69 (showing a diagram of the similarities between KIOSK and Defendants' nearly identical design.))  Further, the Complaint alleges "Defendants, overtly copied entire sections of KIOSK's website for use in their own website."  (Complaint, ¶ 134.)  Thus, when construed in the light most favorable to KIOSK, KIOSK's Complaint alleges that the public will be deceived or confused because of the difficulties in distinguishing between KIOSK's and the Defendants' products and services.

G.     **Defendants' Economic Loss Rule Argument Fails at this Early Stage of Litigation.**

Defendants' argument that any of KIOSK's claims are barred by the economic loss rule is premature.  For a claim to survive a motion to dismiss based on the

15

economic loss rule, a plaintiff "merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract."  *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018).  In order to find a duty independent of a contract, and thus actionable in tort, the duty must (1) arise from a source other than the relevant contract; and (2) the duty must not be a duty also imposed by the contract.  *Swan Glob. Invs., LLC v. Young*, No. 18-CV-03124-CMA-NRN, 2020 WL 897654, at *5 (D. Colo. Feb. 25, 2020) (internal quotations omitted).

As explained in Sections III and IV, *supra*, the scope and interpretation of the Confidentiality Agreements are in dispute, and Defendants' have explicitly reserved the right to argue that the Confidentiality Agreements are void under Colorado Law.  (Motion, at 13, n.8.)  Until these outstanding issues are settled during the course of the litigation, it is premature for the Court to decide at the pleading stage—before any discovery—whether KIOSK's claims arise from "the violation of a tort duty that is independent of the contract." *Cf. Aaron H. Fleck Revocable Tr. through Fleck v. First W. Tr. Bank*, No. 21-CV-01073-CMA-GPG, 2022 WL 872633, at *4 (D. Colo. Mar. 23, 2022) (affirming denial of motion to dismiss on the basis of the economic loss rule, stating "that it would be premature to dismiss Plaintiffs' claims without further factual development or discovery").

H. **KIOSK's Unjust Enrichment Claim Should Not be Dismissed at this Early Stage of Litigation.**

Defendants' argument that KIOSK's Unjust Enrichment claim of good faith and fair dealing is duplicative of KIOSK's contract claims is premature.  Again, as explained in Sections III and IV, *supra*, the scope and interpretation, as well as the enforceability, of

16

the Confidentiality Agreements are in dispute, and Defendants' have explicitly reserved the right to argue that the Confidentiality Agreements are void under Colorado Law. (Motion, at 13, n.8.)  Until these outstanding issues are settled during the litigation, it is premature for the Court to determine whether KIOSK's Unjust Enrichment claim is duplicative, and thus KIOSK's claim should not be dismissed.  *See Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 860 (Colo. App. 2007) ("[W]hile plaintiffs may not be permitted to recover under theories of both breach of express contract and quantum meruit, it was not inappropriate to plead both theories of recovery in their complaint.").

<u>**CONCLUSION**</u>

For the foregoing reasons, KIOSK respectfully requests that the Court deny Defendants' Partial Motion to Dismiss in its entirety.  However, should the Court determine that any of KIOSK's allegations are deficient, KIOSK respectfully requests leave to amend in accordance with the liberal pleading standards of Fed. R. Civ. P. 15.

Dated:  April 5, 2023

Respectfully submitted,

_/s/ David J. Tsai_
David J. Tsai (admitted)
  Email:  david.tsai@pillsburylaw.com
John Steger (admitted)
  Email:  john.steger@pillsburylaw.com
Natalie Truong (admitted)
  Email:  natalie.truong@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone: (415) 983-1000

*Attorneys for Plaintiff*
*KIOSK INFORMATION SYSTEMS, INC.*

KIOSK Information Systems, Inc.
346 South Arthur Avenue
Louisville, Colorado 80027

4883-3611-4007

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case via the Court's CM/ECF system.

Dated:  April 5, 2023                                    _____*/s/ David J. Tsai*_____
                                                                      David J. Tsai

4883-3611-4007