**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00352-GPG-KLM

KIOSK INFORMATION SYSTEMS, INC.,

        Plaintiff,

    v.

COLE KEPRO INTERNATIONAL, LLC;
AMERICAN KIOSKS; ERIC NEBOLA;
TAYLOR LIGHTSEY; AND MICHAEL
RASMUSSEN,

        Defendants.

---

**DEFENDANTS' REPLY
IN SUPPORT OF PARTIAL MOTION TO DISMISS**

---

## INTRODUCTION

The Opposition [ECF No. 32] removes all doubt that KIOSK Information Systems, Inc.'s ("KIOSK") Complaint does not "raise[s] a right to relief above the speculative level" for its core claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Faced with questions about precisely what confidential or trade secret information defendants purportedly took from KIOSK, the Opposition responds only by referring to passages in the Complaint containing generic lists of categories of information that the Defendants Eric Nebola, Tucker Lightsey, and Michael Rasmussen (the "Employees") allegedly had access to before they left KIOSK, and to vague allegations made "on information and belief" that some (unspecified) portion of this information was taken by some (unspecified) combination of the Defendants. These references amount to mere "labels and conclusions"; "formulaic recitation[s] of the elements of [the] cause[s] of action"; and, fundamentally, mere speculation. *Id.* As such, the trade secret and confidentiality claims at the center of this dispute should be dismissed.

Other challenged claims fare no better. The Opposition makes plain that KIOSK's claims against Mr. Rasmussen are equally speculative. Its interpretation of the non-solicit provision ignores the textual meaning derived from the Executive Confidentiality Assignment Agreements ("Agreements") as a whole, postulates "absurd results" where there are none, and runs afoul of black letter law requiring any ambiguity be interpreted against KIOSK. The Opposition's argument that the breach of implied duty claim can survive because the Employees had "discretion" to disclose confidential information fails under a plain reading of the Complaint, as do the Opposition's arguments for likelihood

1

of confusion (in support of unfair competition). In sum, the Complaint is utterly devoid of the substance the law mandates as the bare minimum. The Court should dismiss.

I.   **KIOSK Cannot Identify the Trade Secrets or Confidential Information It Alleges Were Misappropriated.**

KIOSK's allegations of purported theft of trade secrets and confidential information remain fatally generic and speculative, and the Opposition's attempts to salvage these claims fail, for multiple reasons.

*First,* the Opposition does nothing to explain what specific trade secrets KIOSK claims to own. The Opposition references Paragraphs 31, 33, and 35 of the Complaint, which include laundry lists of information the Employees purportedly had access to at KIOSK. These lists include generic categories such as "information regarding KIOSK's product designs," "product configuration," "component suppliers," "customers' key contact information," "customer agreements," "pricing," etc. But these are merely categories of information that *might* contain nuggets within that *might* constitute trade secrets. These generic categories are not in and of themselves trade secrets. For example, although it is theoretically possible for aspects of "product designs" to be trade secrets, neither the Complaint nor the Opposition explains what elements of public-facing kiosks, whose configuration is apparent on their face, could constitute trade secrets. Similarly, neither the Complaint nor the Opposition explain how KIOSK's "pricing" is a trade secret, when the industry leader, Genmega, posts is prices (and designs) publicly on the Internet. KIOSK's failure to meaningfully identify and describe its purported trade secrets is fatal. *See, e.g.*, *Hauschild GMBH & CO. KG v. FlackTek, Inc.*, No. 20-cv-02532, 2022 WL 392501, at *9 (D. Colo. Feb. 9, 2022) (stating that a plaintiff alleging misappropriation of

a trade secrets must plausibly allege "the specific types of confidential information ... with sufficient particularity to identify the existence of its claimed trade secrets.").

*Second*, even assuming the Complaint's laundry lists meaningfully identify specific trade secrets (and they do not), nowhere does the Complaint ever allege what Defendants *purportedly took*, another essential element. *See, e.g.*, Opp. at 5 (listing acquisition or disclosure of a trade secret as an element of claims). Indeed, the Opposition's attempt to show otherwise proves the point. In response to this argument, the best the Opposition can muster are two wholly generic allegations in the Complaint that Defendants disclosed "[unspecified] confidential and proprietary information" and "disclosed and/or used KIOSK's [unspecified] trade secrets." *Id*. at 8 (quoting Compl. ¶¶ 79, 109). These completely generic (and unfounded) assertions do not suffice, as they leave the Defendants and the Court completely in the dark as to what this case is even about (KIOSK's "customer agreements"? Its "component suppliers"? "Pricing"? "Key customer contact information"? "Product configuration"?). This is not permissible. *See, e.g.*, *Animal Care Sys., Inc. v. Hydropac/Lab Prod., Inc.,* No. 13-cv-00143, 2015 WL 1469513, at *5 (D. Colo. Mar. 26, 2015) (explaining that the complaint must "explain, with sufficient particularity, the information allegedly misappropriated that constitutes a cognizable trade secret; otherwise, [the defendant] cannot adequately prepare its defense.").

*Third*, the Opposition misinterprets law from the Tenth Circuit, which makes clear that dismissal is appropriate at the outset where the Complaint fails to identify with specificity the trade secrets at issue. As a threshold matter, and as noted in Defendants' Motion (Mot. at 11 n.7), the Tenth Circuit's recent decision in *LS3 Inc. v. Cherokee Nation*

*Strategic Programs, L.L.C.,* No. 21-1385, 2022 WL 3440692 (10th Cir. Aug. 17, 2022), appears to overrule the older caselaw from this District on which the Opposition relies, which stated such dismissal should generally only occur "in the most extreme cases." *See* Opp. at 6 (quoting *SBM Site Servs., LLC v. Garrett*, No. 10-CV000385, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012)). As explained in Defendants' opening Motion, in *LS3*, the Tenth Circuit affirmed dismissal of trade secret and breach of confidentiality claims *on motion to dismiss*, explaining that such dismissal was appropriate "because the amended complaint failed to allege what information the Individual Employees shared" and thus "the conclusory factual allegations 'are merely consistent with,' and not indicative of, the [d]efendants' liability, and therefore 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at *5 (quoting *Iqbal*, 556 U.S. at 678). In so doing, the Tenth Circuit gave absolutely no indication that any extra caution in dismissal was warranted merely because of the early stage of the case. Rather than address this dispositive precedent Defendants identified, the Opposition simply ignores it.

Moreover, even if the "extreme cases" standard somehow survived the Tenth Circuit's *LS3* decision (and it did not), this case presents precisely the type of allegations warranting dismissal under that standard. Just as in the many cases from this District predating the *LS3* decision that followed the "extreme cases" standard but nonetheless rejected trade secret and confidentiality claims on motion to dismiss for lack of specificity, here, KIOSK has simply not provided adequate information for its trade secret or confidentiality claims to proceed. *See, e.g.*, *Sticky.io, Inc. v. Martingale Software, LLC*, Civil Action No. 21-cv-00664, 2021 WL 5508429, at *4 (D. Colo. Oct. 27, 2021)

4

(dismissing DTSA claim for lack of specificity); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-cv-00463, 2013 WL 212640, at *9 (D. Colo. Jan. 18, 2013) (dismissing CUTSA counterclaim for lack of specificity); *Hauschild,* 2022 WL 392501, at *9 (same).

## II.  KIOSK Failed to Plausibly Allege Claims Against Mr. Rasmussen.

KIOSK's attempt to salvage its generic allegations against Mr. Rasmussen are similarly unavailing. In response to the Defendants' concerns regarding vague and speculative pleading, the Opposition identifies just three paragraphs in the Complaint:

> 79. On information and belief, Nebola, Lightsey, and Rasmussen breached the Confidentiality Agreement by disclosing to Cole Kepro and American Kiosks confidential and proprietary information belonging to KIOSK.
>
> 108. On information and belief, Nebola, Lightsey, and Rasmussen disclosed and/or used KIOSK's trade secrets without its consent, including by disclosing and/or using KIOSK's trade secrets for the benefit of Cole Kepro and American Kiosks.
>
> 120. On information and belief, Nebola, Lightsey, and Rasmussen disclosed and/or used KIOSK's trade secrets without its consent, including by disclosing and/or using KIOSK's trade secrets for the benefit of Cole Kepro and American Kiosks.

Compl. ¶¶ 79, 108, 120; *see also* Opp. at 10.

All three of the cited allegations suffer from precisely the defects identified in the Motion to Dismiss. All three paragraphs are pleaded "on information and belief." All three group Mr. Rasmussen with the other Defendants, without any elaboration as to what each Defendant may or may not have done. And all three provide absolutely no details as to what confidential or trade secret information Mr. Rasmussen is alleged to have taken from KIOSK. These allegations are not sufficient.

Indeed, the other allegations in the Complaint make the generic allegations against

5

Mr. Rasmussen all the more implausible. For example, as the Complaint's own allegations make clear, Mr. Rasmussen had no involvement with BOA, and he left KIOSK seven months after Mr. Nebola and Mr. Lightsey. *See* Compl. ¶¶ 49–57 (BOA discussions); *id.* ¶¶ 58–59, 66 (resignations). Yet the Complaint appears to speculate that Mr. Rasmussen stole the very same trade secrets as the other two Employees, including those related to BOA. This is implausible speculation. Simply put, KIOSK has "'not nudged [its] claims across the line from conceivable to plausible'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 569).[1]

### III.   KIOSK Failed to Plausibly Plead a Breach of the Non-Solicit Provisions.

The Opposition's arguments in support of the breach of non-solicit provisions fall short, for several reasons. *First*, reading the Agreements as a whole, as KIOSK advocates (Opp. at 12), supports *Defendants'* argument that the quoted provisions expire one year after execution. The Opposition simply ignores the fact that, as noted in the Motion, the Agreement conditions other obligations on the Employees' termination date, but opts not to do so in the non-solicitation provision. *See* Mot. at 14 (citing provisions). KIOSK "clearly knew how to express one meaning" so its failure to do so in the non-solicitation provision "implies that the meaning was not intended." *Weight Loss Healthcare Ctrs. of Am., Inc. v. Off. of Pers. Mgmt.*, 655 F.3d 1202, 1210 (10th Cir. 2011). *Second*, Contrary to KIOSK's assertion (Opp. at 12), Defendants' interpretation would not lead to an absurd result because the non-solicitation provisions would still be in effect for a one-year period after

---

[1] These inconsistent allegations also refute the assertion that *Robbins* is "inapposite." Opp. at 10. Just as in *Robbins*, here, "[p]resumably, the allegedly tortious acts committed by [Defendants] are entirely different in character and therefore are mistakenly grouped in single allegation." 519 F.3d at 1250.

6

signing and because if the Employees wrongly disclose confidential information to a competitor during their employment, KIOSK could assert a claim for breach of the duty of loyalty. *See* Compl. ¶¶ 137–44. *Cf. Phoenix Cap., Inc. v. Dowell*, 176 P.3d 835, 841 (Colo. App. 2007) (rejecting argument that invalidation of overly restrictive non-compete provision from the outset "leaves employers unprotected," later in time, noting "[a]n employer may always enter into new employment agreements"). *Third*, the Opposition does not dispute that to the extent the Agreements are ambiguous, they must be construed in the Employees' favor and against KIOSK. *See* Opp. at 11–12. At a minimum, the Agreements are ambiguous and should be construed against the employer, KIOSK, to impose the least onerous restrictions on the Employees.

## IV. Because the Employees Had No Discretion in the Terms or Performance of the Agreements, KIOSK's Breach of the Implied Covenant Claim Fails.

The plain text of the Agreements and the Complaint refute KIOSK's assertion that the Employees had "wide latitude" and "discretion" under the Agreement "regarding what information to disclose to whom." Opp. at 12. The Agreements purport to categorically prohibit disclosure of Confidential Information to "any person or entity other than the Company" without "prior written consent." ECF No. 1-1 at 3. And lest there be any doubt, the Complaint itself makes plain that, in KIOSK's view, the Employees had absolutely no discretion to disclose Confidential Information. *See, e.g.*, Compl. ¶ 79. Hollow references to "discretion" in the Complaint and Opposition cannot overcome the weight of KIOSK's own pleadings and the incorporated contractual language. *See Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1018 (10th Cir. 2018) (on motion to dismiss, allegations in complaint "do not overcome contradictory statements in

7

the text of a contract" under consideration).

## V. KIOSK's Claim for Unfair Competition Fails.

KIOSK's unfair competition claim should be dismissed for failure to allege a plausible likelihood of confusion as to the source of Cole Kepro's products. The Opposition does not contest that likelihood of confusion is an essential element of this claim. *See* Opp. at 15. Instead, it points to allegations that Cole Kepro's kiosk design is purportedly "similar" to KIOSK's and that Defendants purportedly "copied … KIOSK's website." *Id.* But these arguments fail on the face of the Complaint.

The Complaint's own allegations dispel any likelihood of confusion as to the source the Parties' respective kiosks. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1222 (10th Cir. 2004) ("[T]he common-law tort of unfair competition has [generally] been limited to protection against copying of nonfunctional aspects of consumer products which have acquired secondary meaning such that they operate as a designation of source."). The images in the Complaint demonstrate that Cole Kepro's kiosk is quite distinct in design. For example, Cole Kepro's design includes two doors, opening in opposite directions, including a separate lower vault for security; KIOSK's has only one door and no separate vault. *See* Compl. ¶ 69. Similarly, Cole Kepro's pin pad, credit card reader, and other features are arranged differently and have a different visual appearance. *See id.* And as the Complaint makes plain, both Parties' kiosks are intended to be branded with *other companies'* branding and trademarks (e.g., BOA). *See id.* In other words, to the extent there is any confusion as to the source of the kiosks, it is by design, pointing the public to the manufacturers' customers (e.g., BOA) as the source; not between manufacturers.

Similarly, the relevant portions of the KIOSK website include generic language that does nothing to identify KIOSK as a unique source of goods or services, such as "[a]gile and unrestrained solution design" "expert integration and in-house manufacturing" "remote management and field support." *See* Compl. ¶ 71.[2] It is simply not plausible to conclude that a member of the public, reviewing Cole Kepro's American Kiosk's website, would ever be confused by such minor similarities in language with the KIOSK website, especially given that the websites are completely distinct, each prominently feature the names of the respective brands, and each look very different. *See id.* (citing website URLs). This claim should be dismissed. *See Gates Corp. v. Dorman Prod., Inc.*, No. 09-CV-02058 CMA-KLM, 2009 WL 5126556, at *6 (D. Colo. Dec. 18, 2009) (dismissing unfair competition claims because "Plaintiff has also not alleged that Defendant deceived or confused the public as to the source its products.").

## VI. KIOSK's Tortious Interference Claim is Deficient.

KIOSK's tortious interference with contract claim appears to allege interference with both the non-disclosure and non-solicitation provisions of the Agreements. Neither states a claim. As to the former, how can one interfere with a confidentiality agreement where it is not even clear what alleged confidential / trade secret information is at issue? In order to state a claim for tortious interference, the complaint must allege awareness of the contract and breach. *See Evans v. Maytag Aircraft Corp.*, No. 16-CV-02264, 2017 WL 1437296, at *9 (D. Colo. Mar. 14, 2017). In other words, Cole Kepro would have to be

---

[2] Many of the alleged instances of "copying" do not even involve identical language across the two websites. *See* Compl. ¶ 71.

9

aware of what information is purportedly protected, and then use that information. This aspect of the claim should be dismissed for vagueness, just like the trade secret claims. Likewise, the allegation of tortious interference with the non-solicitation provisions fails because Cole Kepro's alleged awareness of the contract came after Messrs. Nebola and Lightsey were hired. In sum, KIOSK's reference to generic allegations of notice (Opp. at 14), falls short of what is required.

**VII.   The Court May Dismiss KIOSK's Unjust Enrichment Claim Now.**

Finally, the Court may dismiss KIOSK's unjust enrichment claim against Mr. Nebola and Mr. Lightsey now, notwithstanding Defendant's forthcoming challenge of the Agreements. The conduct giving rise to KIOSK's unjust enrichment claim is the same conduct KIOSK alleges to be covered under the Agreements. *See* Compl. ¶¶ 130–36. As this Court has explained, "The Complaint does not allege that these contracts were invalid or unenforceable, and the fact that Plaintiffs' breach of contract claim may fail does not allow them to plead unjust enrichment in the alternative." *Trejo v. Xclusive Staffing, Inc.*, No. 17-CV-01602, 2018 WL 4372724, at *8 (D. Colo. May 16, 2018) (granting motion to dismiss unjust enrichment claim as duplicative of breach of contract claim); *Echostar Satellite, L.L.C. v. Splash Media Partners*, L.P., No. 07-CV-02611, 2010 WL 3873282, at *8 (D. Colo. Sept. 29, 2010) (entering summary judgment against unjust enrichment claim, reasoning, "[T]he fact that EchoStar's breach of contract claim may fail does not allow EchoStar to plead unjust enrichment in the alternative.").

## CONCLUSION

Defendants' Partial Motion to Dismiss should be granted.

| | |
|---|---|
| Dated: April 19, 2023 | Respectfully submitted,<br><br>*/s/ Charles W. Steese*<br>Charles W. Steese<br>PAPETTI SAMUELS WEISS MCKIRGAN LLP<br>16430 N. Scottsdale Road, Ste. 290<br>Scottsdale, AZ 85254<br>480.800.3537<br>csteese@pswmlaw.com<br><br>Alec P. Harris<br>Michael A. Xavier<br>ARMSTRONG TEASDALE LLP<br>4643 S. Ulster Street, Suite 800<br>Denver, CO  80237<br>(720) 200-0676<br>aharris@atllp.com<br>mxavier@atllp.com<br><br>*Attorneys for Defendants Cole Kepro International, LLC d/b/a American Kiosks, Eric Nebola, Taylor Lightsey, and Michael Rasmussen* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via ECF on April 19, 2023 to:

David J. Tsai
John Steger
Natalie Truong
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1000
david.tsai@pillsburylaw.com
john.steger@pillsburylaw.com
natalie.truong@pillsburylaw.com

*Attorneys for Plaintiff KIOSK Information Systems, Inc.*

/s/ *Marina Brainerd*