**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-00352-GPG-KLM

KIOSK INFORMATION SYSTEMS, INC.,

        Plaintiff,

  v.

COLE KEPRO INTERNATIONAL, LLC;
AMERICAN KIOSKS; ERIC NEBOLA;
TAYLOR LIGHTSEY; AND MICHAEL
RASMUSSEN,

        Defendants.

---

**COUNTERCLAIMS BY DEFENDANTS COLE KEPRO INTERNATIONAL, LLC,
ERIC NEBOLA, TAYLOR LIGHTSEY, AND MICHAEL RASMUSSEN**

---

Counterclaim Plaintiffs Cole Kepro International, LLC ("Cole Kepro"), Eric Nebola, Taylor Lightsey, and Michael Rasmussen (collectively, "Counterclaim Plaintiffs") bring the following counterclaims against Counterclaim Defendant KIOSK Information Systems, Inc. ("KIOSK").[1]

## INTRODUCTION

1. For many years, Messrs. Nebola, Lightsey, and Rasmussen (the "Former Employees") worked as diligent and loyal employees of KIOSK. In early 2021, KIOSK forced them to sign Executive Confidentiality Assignment Agreements or be terminated. These Agreements were overly restrictive, and included confidentiality and non-solicitation provisions that, if read as KIOSK urges, would improperly curtail the Former Employees' ability to gain other employment in the industry, despite not containing an actual non-competition provision.

2. In late 2021 and early 2022, the Former Employees left KIOSK to work for Cole Kepro. At the time of their departure from KIOSK, Mr. Nebola and Mr. Lightsey were owed significant sums for their accrued paid time off, but KIOSK failed to pay those amounts. Now, KIOSK has sued the Former Employees and Cole Kepro, asserting that the Former Employees violated the Agreements.

3. Counterclaim Plaintiffs assert these Counterclaims to seek a declaration that KIOSK's interpretation of the Agreements is erroneous; that the Agreements as written and applied by KIOSK are vague, overbroad, contrary to Colorado public policy,

---

[1] Per the Court's direction and to comply with the Scheduling Order, Counterclaim Plaintiffs assert these Counterclaims now, despite their answer to KIOSK's Complaint not yet being due. *See* Scheduling Order [ECF No. 41] § 9(A).

1

and unenforceable; and that none of the Counterclaim Plaintiffs breached the Agreements. Mr. Nebola and Mr. Lightsey also bring these Counterclaims to collect their earned, vested, and determinable wages owed by KIOSK and related remedies.

## PARTIES

4. Cole Kepro is a Nevada limited liability company with headquarters in Nevada.

5. Mr. Nebola is an employee of Cole Kepro and a resident of Colorado.

6. Mr. Lightsey is an employee of Cole Kepro and a resident of Colorado.

7. Mr. Rasmussen is an employee of Cole Kepro and a resident of Colorado.

8. On information and belief, KIOSK is a Colorado corporation with headquarters in Colorado.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. § 1367 because the Counterclaims are so related to claims in the action within the Court's jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. The Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201–02 and § 1331 because Counterclaim Plaintiffs seek declaratory relief under the Declaratory Judgment Act.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Counterclaims occurred in this District.

11. This Court has personal jurisdiction over KIOSK because KIOSK resides in the District and regularly conducts business there.

# FACTUAL ALLEGATIONS

**Messrs. Nebola, Lightsey, and Rasmussen's Employment at KIOSK**

12. KIOSK manufactures kiosks for commercial use. It also develops software for use in its kiosks.

13. For many years and up until his resignation from the company in October 2021, Eric Nebola was an employee of KIOSK.

14. At the time of his departure, Mr. Nebola was a Vice President of Sales.

15. Mr. Nebola was a salaried employee at KIOSK.

16. Mr. Nebola accrued paid time off in his capacity as an employee at KIOSK.

17. For many years and up until his resignation from the company in October 2021, Tucker Lightsey was an employee of KIOSK.

18. At the time of his departure, Mr. Lightsey was a Director of Product Development.

19. Mr. Lightsey was a salaried employee at KIOSK.

20. Mr. Lightsey accrued paid time off in his capacity as an employee at KIOSK.

21. For many years and up until his resignation from the company in May 2022, Michael Rasmussen was an employee of KIOSK.

22. At the time of his departure, Mr. Rasmussen was a Prototype Systems Manager.

23. Mr. Rasmussen's role at KIOSK was not an executive position.

**KIOSK Forces the Former Employees to Sign Agreements**

24. In early 2021, KIOSK forced Messrs. Nebola, Lightsey, and Rasmussen to sign a document entitled "Executive Confidentiality Assignment Agreement" ("Agreement" or "Agreements").

25. KIOSK required the Former Employees to sign the Agreements as a condition of their ongoing employment with KIOSK.

26. In other words, KIOSK threatened to fire the Former Employees unless they signed the Agreements.

27. KIOSK was not willing to negotiate the terms of the Agreement with the Former Employees.

28. Faced with no other choice, Mr. Nebola signed the Agreement on February 22, 2021. A copy of that document is attached as **Exhibit A**.

29. Faced with no other choice, Mr. Lightsey signed the Agreement on March 3, 2021. A copy of that document is attached as **Exhibit B**.

30. Faced with no other choice, Mr. Rasmussen signed the Agreement on February 22, 2021. A copy of that document is attached as **Exhibit C**.

31. The Agreements contain many restrictive covenants, including:

    a. a confidentiality provision;

    b. a provision purporting to require employees to disclose and assign to KIOSK inventions, copyrights, patents, trademarks, and other intellectual property created by employees during their employment to KIOSK;

4

    c. a provision purporting to require employees to obtain KIOSK's approval for all publications "that concern[] the Company's business";

    d. a provision purporting to prohibit employees from soliciting the business of "any customer, supplier, or business relation" of KIOSK;

    e. a provision purporting to prohibit employees from soliciting any "employees, consultant, or contractor of the Company" to leave their relationship with KIOSK;

    f. a provision purporting to waive the employees' right to contest injunctive relief or request a bond for the same; and

    g. a provision purporting to award to KIOSK attorney's fees and costs for injunctive relief.

32. The Agreements do not contain a non-competition provision.

33. The Agreements' confidentiality provision states in relevant part:

Confidential information means all nonpublic, confidential and proprietary information relating to the Company's business or that of any Company customer or client. Examples of Confidential Information include, but are not limited to, trade secrets; formulas; methodologies; processes; development and innovation; customer and client lists and contract information; software databases; designs; forecasts; reports; specifications; sales; techniques; information regarding technology, programs products and services sold, distributed or being developed by the Company; information regarding the Company's current and developing technology, programs, products and services; information regarding customers, prospective customers, clients, prospective clients, and business contacts; prospective and executed contracts and subcontracts; marketing and/or sales plans; and other plans and proposals used by the Company in the course of its business; and any nonpublic or proprietary information regarding the Company or the Company's present or future business plans, financial information, or any

> intellectual property; whether any of the foregoing is embodied in hard copy, computer-readable form, electronic or optical form, or otherwise.
>
> …
>
> Executive will at all times during and after employment with the Company maintain the confidentiality of the Confidential Information. Executive will not, without Company's prior written consent, directly or indirectly: (1) copy or use any Confidential Information; or (2) show, give, sell disclose or otherwise communicate any Confidential Information to any person or entity other than the Company. These restrictions do not apply if the Confidential Information has been made generally available to the public by the Company or becomes generally available to the public through some other normal course of events. All Confidential Information prepared by or provided to Executive is and will remain the Company's property or the property of the Company customer to which it belongs.

Agreements at 1–2.

34. The Agreements' customer non-solicitation provision states in relevant part:

> Executive covenants and agrees that during a period of one (1) year Executive will not on behalf of Executive or directly or indirectly through another person or entity (including without limitation as a proprietor, owner, principal, agent, partner, officer, director, employee manager, member, consultant or otherwise):
>
> Solicit, divert, take away, or otherwise attempt in any manner to solicit, divert, or take away, the business of any customer, supplier or other business relation of the Company or any of its Affiliates, that Executive knows, or reasonably should know, is a customer, supplier or other business relation of the Company, for a purpose that is related to a Restricted Business, or in any way interfere with the relationship between any such customer, supplier or other business relation and the Company or any of its Affiliates (Including, without limitation, inducing such person or entity to cease doing business with the Company or any of its Affiliates or making any negative statements or communications about the Company or any of its Affiliates)….

Agreements at 4.

35. The Agreements' employee non-solicitation provision states:

> Executive covenants and agrees that during a period of one (1) year Executive will not on behalf of Executive or directly or indirectly through

> another person or entity (including without limitation as a proprietor, owner, principal, agent, partner, officer, director, employee manager, member, consultant or otherwise):
>
> …
>
> Solicit or induce to leave the Company any person who Executive knows, or reasonably should know, is then an employee, consultant, or contractor of the Company or any of its Affiliates or who was an employee, consultant or contractor of the Company or any of its Affiliates (with respect to the Company's or any of its Affiliates business) at any time during the twelve-month period immediately preceding termination of Executive's employment with the Company. This does not apply to any contractors or consultants who or which has provided services to the other person or entity prior to the termination date or any individual whose employment was previously terminated by the Company or any Affiliate of the Company and, provided, further, the foregoing shall not apply to any general solicitation conducted through the use of advertisements in the media, through the use of search firms or other routine recruiting activities, provided that such searches are not specifically targeted at employee of the Company or any Affiliate of the Company.

*Id.*

36. KIOSK did not make any attempt to explain the meaning of the Agreements to the Former Employees. For example, KIOSK did not explain:

   a. What "Confidential Information" or "trade secrets" the Former Employees had access to at KIOSK;

   b. When the Agreements' non-solicitation provisions began or ended;

   c. What the term "Restricted Business" means as it is used in the customer non-solicitation provision; or

   d. What the terms "customer, supplier, or business relation" mean as they are used in the customer non-solicitation provision.

7

37. KIOSK did not advise the Former Employees of their right to retain counsel to review the Agreements.

**KIOSK Fails to Pay Mr. Nebola and Mr. Lightsey Accrued PTO After Departure**

38. On or about October 11, 2021, Mr. Nebola resigned from KIOSK.

39. At the time of his departure, Mr. Nebola had accrued 160 hours of paid time off.

40. To this day, KIOSK has failed to pay Mr. Nebola for this paid time off.

41. On or about October 16, 2021, Mr. Lightsey resigned from KIOSK.

42. At the time of his departure, Mr. Lightsey had accrued 160 hours of paid time off.

43. On May 25, 2023, Messrs. Nebola and Lightsey demanded payment of their paid time off pursuant to C.R.S. §§ 8-4-101, *et seq*.

44. To this day, KIOSK has failed to pay Mr. Nebola for this paid time off.

45. To this day, KIOSK has failed to pay Mr. Lightsey for this paid time off.

**KIOSK Sues, Asserting Breach of Contract**

46. After their departure from KIOSK, Cole Kepro hired Mr. Nebola and Mr. Lightsey.

47. Like KIOSK, Cole Kepro manufactures kiosks for commercial use. But it does not make software.

48. In approximately May 2022, Mr. Rasmussen resigned from KIOSK and joined Cole Kepro.

49. On February 7, 2023, KIOSK filed the present litigation, asserting, among other things, that Messrs. Nebola, Lightsey, and Rasmussen violated the Agreements' non-solicitation and confidentiality provisions, and that Cole Kepro tortiously interfered with those Agreements.

### First Claim for Relief:

### (By All Counterclaim Plaintiffs)

### Declaratory Judgment, 28 U.S.C. §§ 2201, *et seq.*

50. Counterclaim Plaintiffs reallege and incorporate by reference all prior paragraphs of the Counterclaims as if alleged herein.

51. Counterclaim Plaintiffs seek a declaration, pursuant to the Declaratory Judgment Act, that the Agreements are vague, overbroad, contrary to the public policy of the State of Colorado, and unenforceable.

52. Counterclaim Plaintiffs further seek a declaration that KIOSK's asserted interpretation of the Agreements is incorrect, and that Messrs. Nebola, Lightsey, and Rasmussen have not violated the Agreements, and that Cole Kepro has not tortiously interfered with the Agreements.

53. There is a substantial controversy between parties, with adverse legal interests, of such immediacy and existence so to warrant a declaratory judgment.

54. Specifically, the parties disagree regarding, among other things, about the meaning of the Agreements' confidentiality and non-solicitation provisions, the enforceability of those provisions, whether the Agreements violate Colorado law and

Colorado public policy, and whether the Counterclaim Plaintiffs have acted improperly under the Agreements.

55. In light of the above, Counterclaim Plaintiffs respectfully request that the Court issue a declaration pursuant to 28 U.S.C. § 2201 that:

   a. Counterclaim Plaintiffs did not take any Confidential Information or trade secrets from KIOSK;

   b. KIOSK has not identified and cannot identify any items taken by the Counterclaim Plaintiffs that would qualify as trade secrets under the Defend Trade Secrets Act or the Colorado Uniform Trade Secrets Act;

   c. Messrs. Nebola, Lightsey, and Rasmussen did not violate the Agreements;

   d. Cole Kepro did not tortiously interfere with the Agreements;

   e. The non-solicitation provisions in the Agreements expired one year after they were signed;

   f. The term "customer" as used in the Agreements' customer non-solicitation provisions means entities that Messrs. Nebola, Lightsey and Rasmussen are aware have outstanding orders for product from KIOSK at the time of the acts in question;

   g. The term "supplier" as used in the Agreements' customer non-solicitation provisions mean entities that Messrs. Nebola, Lightsey

10

      and Rasmussen are aware have outstanding requests to provide product to KIOSK at the time of the acts in question;

h. The terms "business relation" and "Restricted Business" as used in the Agreements' customer non-solicitation provisions are vague, ambiguous, overbroad, and unenforceable;

i. KIOSK's practice to have non-executives sign the Agreement renders the Agreement contrary to Colorado public policy and therefore unenforceable;

j. The Agreements' confidentiality and non-solicitation provisions, as written and applied by KIOSK, are overbroad, amount to a *de facto* non-competition agreement, constitute an undue restraint on the Former Employees' ability to earn a living, and as such, are contrary to Colorado public policy, unenforceable, and void.

<u>**Second Claim for Relief:**</u>

**(By Nebola and Lightsey)**

**Wage Claim Act Violations, C.R.S. §§ 8-4-101, *et seq.***

56. Mr. Nebola and Mr. Lightsey reallege and incorporate by reference all prior paragraphs of the Counterclaims as if alleged herein.

57. Until October 2021, Mr. Nebola and Mr. Lightsey were both salaried, full-time employees of KIOSK.

58. Mr. Nebola and Mr. Lightsey were both paid bi-monthly at KIOSK.

59. Under KIOSK's employee policies, full-time employees including Mr. Nebola and Mr. Lightsey could accrue up to 160 hours of paid time off.

60. Mr. Nebola resigned from KIOSK on October 11, 2021.

61. At the time of his departure, Mr. Nebola had accrued 160 hours of unused paid time off.

62. Mr. Lightsey resigned from KIOSK on October 16, 2021.

63. At the time of his departure, Mr. Lightsey had accrued 160 hours of unused paid time off.

64. To date, KIOSK has not paid Mr. Nebola for his 160 hours of paid time off.

65. To date, KIOSK has not paid Mr. Lightsey for his 160 hours of paid time off.

66. Mr. Nebola and Mr. Lightsey's outstanding paid time off qualify as "wages" or "compensation" under the Colorado Wage Claim Act.

67. Under the Colorado Wage Claim Act, KIOSK was required to pay Mr. Nebola and Mr. Lightsey their paid time off no later than the time the next regular paycheck would have come due, had they not resigned.

68. On May 25, 2023, Mr. Nebola and Mr. Lightsey, through counsel, served a demand for their unpaid wages on counsel for KIOSK.

69. To date, KIOSK has not responded to this demand.

70. KIOSK's failure to pay Mr. Nebola and Mr. Lightsey their accrued paid time off at the time of their departures has harmed Mr. Nebola and Lightsey by depriving them of earned, vested, and determinable wages.

71. KIOSK's failure to pay Mr. Nebola and Mr. Lightsey their accrued paid time off at the time of their departures violated the Colorado Wage Claim Act.

72. KIOSK's violation of Colorado Wage Claim Act entitles Mr. Nebola and Mr. Lightsey to payment in an amount to be determined at trial, potentially including the amount of their unpaid wages, statutory penalties, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs demand judgment be entered in their favor and that this Court:

A. Enter judgment against KIOSK on all Counterclaims above;

B. Declare that Counterclaim Plaintiffs did not take any Confidential Information or trade secrets from KIOSK;

C. Declare that KIOSK has not identified and cannot identify any items taken by the Counterclaim Plaintiffs that would qualify as trade secrets under the Defend Trade Secrets Act or the Colorado Uniform Trade Secrets Act;

D. Declare that Messrs. Nebola, Lightsey, and Rasmussen did not violate the Agreements;

E. Declare that Cole Kepro did not tortiously interfere with the Agreements;

F. Declare that the Agreements expired one year after they were signed;

G. Declare that the term "customer" as used in the Agreements' customer non-solicitation provisions means entities that Messrs. Nebola, Lightsey, and Rasmussen are aware have outstanding orders for product from KIOSK at the time of the acts in question;

H. Declare that the term "supplier" as used in the Agreements' customer non-solicitation provisions mean entities that Messrs. Nebola, Lightsey and Rasmussen are aware have outstanding requests to provide product to KIOSK at the time of the acts in question;

I. Declare that the terms "business relation" and "Restricted Business" as used in the Agreements' customer non-solicitation provisions are vague, ambiguous, overbroad, and unenforceable;

J. Declare that KIOSK's practice to have non-executives sign the Agreement renders the Agreement contrary to Colorado public policy and therefore unenforceable;

K. Declare that the Agreements' confidentiality and non-solicitation provisions, as interpreted by KIOSK, are overbroad, amount to a de facto non-competition agreement, constitute an undue restraint on the Former Employees' ability to earn a living, and as such, are contrary to Colorado public policy, unenforceable, and void;

L. Award Mr. Nebola his unpaid wages from KIOSK;

M. Award Mr. Nebola statutory penalties;

N. Award Mr. Nebola attorney's fees and costs;

O. Award Mr. Nebola pre- and post-judgment interest;

P. Award Mr. Lightsey his unpaid wages from KIOSK;

Q. Award Mr. Lightsey statutory penalties;

R. Award Mr. Lightsey attorney's fees and costs;

S. Award Mr. Lightsey pre- and post-judgment interest;

T. Award Counterclaim Plaintiffs costs and attorney's fees as the Court may deem equitable and just; and

U. Award Counterclaim Plaintiffs any other relief the Court deems just and equitable under the circumstances.

## JURY TRIAL DEMAND

Counterclaim Plaintiffs demand a trial by jury on all claims so triable.

Dated: June 6, 2023

Respectfully submitted,

/s/ Charles W. Steese
Charles W. Steese
PAPETTI SAMUELS WEISS MCKIRGAN LLP
16430 N. Scottsdale Road, Ste. 290
Scottsdale, AZ 85254
480.800.3537
csteese@pswmlaw.com

Alec P. Harris
Michael A. Xavier
ARMSTRONG TEASDALE LLP
4643 S. Ulster Street, Suite 800
Denver, CO  80237
(720) 200-0676
aharris@atllp.com
mxavier@atllp.com

*Attorneys for Defendants/Counterclaim Plaintiffs Cole Kepro International, LLC d/b/a American Kiosks, Eric Nebola, Taylor Lightsey, and Michael Rasmussen*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was served via ECF on June 6, 2023 to:

David J. Tsai
John Steger
Natalie Truong
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1000
david.tsai@pillsburylaw.com
john.steger@pillsburylaw.com
natalie.truong@pillsburylaw.com

*Attorneys for Plaintiff/Counterclaim Defendants KIOSK Information Systems, Inc.*

/s/ *Marina Brainerd*