# EXHIBIT A



| | Executive Confidentiality Assignment Agreement | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page **1** of **7** |

**Scope:** This policy applies to all employees who are Director level and above, sales, engineering and software employees who are selectively identified.

This Confidentiality, assignment agreement (this Agreement") is entered into as of February 22, 2021 (the "Effective Date"), by and between KIOSK INFORMATION SYSTEMS, INC. (together with its "Affiliates" as defined below in Section 8, and its successors and assigns, the "Company"), and _____Eric Nebola_____ ("Executive").

The company is in the business of leading the self-service industry with teams of experts in engineering, software development, production, and support who make kiosk projects and their course to market efficient, simple and successful (the "Business").

Executive is an experienced employee with considerable skill and expertise valuable to the success of the Company. During employment with the Company, Executive will have access to the Company's confidential, proprietary and trade secret information. It is desirable and in the best interests of the Company to protect the confidential, proprietary and trade secret information, to prevent unfair competition by former employees of the Company following separation of their employment with the Company, and to secure cooperation from former employees with respect to matters related to their employment with the Company.

Executive acknowledges that Executive's employment or continued employment with the Company depends on, among other things Executive's willingness to agree to and abide by the non-disclosure and other covenants contained in this Agreement.

AGREEMENT

Now, therefore, in consideration of the foregoing premises, Executive's receipt of employment or continued employment with the Company, Executive's receipt of other Company benefits, and the respective agreements of the Company and Executive set forth below, the Company and executive intending to be legally bound agree as follows:

**Confidential Information**

Definition of Confidential Information. Confidential information means all nonpublic, confidential and proprietary information relating to the Company's business or that of any Company customer or client. Examples of Confidential Information include, but are not limited to, trade secrets; formulas; methodologies; processes; development and innovation; customer and client lists and contract information; software databases; designs; forecasts; reports; specifications; sales; techniques; information regarding technology, programs products and services sold, distributed or being developed by the Company; information regarding the Company's current and developing technology, programs, products and services; information regarding customers, prospective customers, clients, prospective clients, and business contacts; prospective and executed contracts and subcontracts; marketing and/or

|  | Executive Confidentiality Assignment Agreement | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page **2** of **7** |

sales plans; and other plans and proposals used by the Company in the course of its business; and any nonpublic or proprietary information regarding the Company or the Company's present or future business plans, financial information, or any intellectual property; whether any of the foregoing is embodied in hard copy, computer-readable form, electronic or optical form, or otherwise.

**Executives Use of Confidential Information**. Executive will at all times during and after employment with the Company maintain the confidentiality of the Confidential Information. Executive will not, without Company's prior written consent, directly or indirectly: (1) copy or use any Confidential Information; or (2) show, give, sell disclose or otherwise communicate any Confidential Information to any person or entity other than the Company. These restrictions do not apply if the Confidential Information has been made generally available to the public by the Company or becomes generally available to the public through some other normal course of events. All Confidential Information prepared by or provided to Executive is and will remain the Company's property or the property of the Company customer to which it belongs.

**Return of Company Information, Material and Property.** Upon request of the Company or upon termination (whether voluntary or involuntary), Executive will immediately turn over to the Company all Confidential Information, including all copies, and other property belonging to Company or any of its customers, including documents, disks, computer equipment or other computer media in Executive's possession or under his or her control. Executive will also return any materials that contain or are derived from Confidential Information, or are connected with or relate to Executive's services to the Company or any of its customers.

**Permitted Communications & Notice.** Executive understands that nothing in this Agreement is intended to prevent Executive from responding to a subpoena or other court order, from filing a charge with the United States Equal Employment Opportunity Commission or any other governmental agency, or from participating in an investigation conducted by a governmental agency. Further, notice is hereby provided to Executive that Executive is immune from criminal and civil liability under state and federal trade secret law if Executive discloses.

<u>Company Inventions</u>

Definition of Company Inventions. Company Inventions means all idea, methodologies, processes, trademarks and service marks, trade secrets, copyrights, patents, inventions, discoveries and improvements to any of the foregoing, that Executive learned of, conceived, developed or created alone or with others during his or her employment with the Company (whether or not conceived, developed or created during regular working hours) that directly or indirectly arise from or relate to: (1) the Company's business, technology, products, software, or services (2) work or research performed for the Company by Executive or any other Company officer, employee, agent, contractor or subcontractor; (3) the use of the Company's products, technology, equipment, software, or time; or (4) Confidential Information belonging to the Company. Company inventions shall not include an invention that Executive developed entirely on Executive's own time without using the Company's equipment, supplies, facilities, or trade secret information except for those inventions that either (1) relate at the

|  | **Executive Confidentiality Assignment Agreement** | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page **3** of **7** |

time of conception or reduction to practice of the invention of the Company's business, or actual or demonstrably anticipated research or development of the Company; or (2) result from any work performed by Executive for the Company.

**Disclosure of Company Inventions.** Whether upon Company's request or voluntarily, Executive will promptly disclose to the Company or its designee, all Company Inventions that Executive has created, contributed to or knows about, regardless of the nature of that knowledge, and regardless of whether such Company Invention, or any aspect of such Company Invention, has been described, committed to writing, or reduced to practice, in whole or part, by any other person. At all other times, Executive will treat any Company Invention as Confidential Information, as that term is defined in "Confidential Information-Definition of Confidential Information."

**Assignment and Disclosure of Inventions.** Executive hereby assigns to the Company all right, title and interest to all Company Inventions, which will be the sole and exclusive property of the Company, whether or not subject to patent, copyright, trademark or trade secret protection. Executive also acknowledges that all original works of authorship that are made by Executive (solely or jointly with others), within the scope of Executive's employment with the Company, and that are protectable by copyright, are "works made for hire," as that term is defined in the United States Copyright Act. To the extent that any such works, by operation of law, cannot be "works made for hire," Executive herby assigns to the Company all right, title, and interest in and to such works and to any related copyrights. Executive will also disclose to the Company all inventions made, discovered, conceived, reduced to practice, or developed by Executive, either alone or jointly with others, within six (6) months after termination of Executive's employment with the Company which results, in whole or in part, from Executive's prior employment by the Company. Such disclosures will be received by the Company in confidence to the extent such inventions are not assigned to the Company.

**Additional Instruments.** Executive will promptly execute, acknowledge and deliver to the Company all additional instruments or documents that the Company determines at any time to be necessary to carry out the intentions of the Company Inventions definition outlined above. Furthermore, whether during or after Executive's employment with the Company, Executive will promptly perform any acts deemed necessary or desirable by the Company, at the Company's expense, to assist it in obtaining, maintaining, defending and enforcing any rights and/or assignment of a Company Invention. Executive hereby irrevocably designates and appoints the Company and its duly authorized officers and agents, as Executive's agent and attorney-in-face to act for an on Executive's behalf and instead of Executive, to execute and file any documents, applications or related findings and do all other lawfully permitted acts in furtherance of the purposes set forth in this document including, without limitation, the perfection of assignment and the prosecution and issuance of patents, patent applications, copyright applications and registrations, trademark applications and registrations, or other rights in connection with such Company Inventions and improvements thereto with the same legal force and effect as if executed by Executive.

**Assignment or Waiver of Moral Rights.** Any assignment of copyright hereunder includes all rights of paternity, integrity, disclosure and withdrawal, and any other rights that may be known as or referred to

Case No 1:23-cv-00032-GPG-KAS Document 1-1 Filed 02/06/25 USDC Colorado Page 5 of 8

|  | Executive Confidentiality Assignment Agreement | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page 4 of 7 |

as "moral rights" (collectively "Moral Rights"). To the extent such Moral Rights cannot be assigned under appliable law and to the extent the following is allowed by the laws in the various countries where Moral Rights exist, Executive herby waives such Moral Rights and consents to any action of the Company that would violate such Moral Rights in absence of such consent.

**Company Authorization for Publication.** During or after Executive's employment with the Company, prior to submitting, disclosing for possible publication, or disseminating outside the Company (such as through public speaking engagements or literature) any material Executive prepares that incorporates information that concerns the Company's business, Executive will deliver a copy of such material to the Company for its review. The Company will notify Executive in writing whether the Company believes such material contains any Confidential Information or Company Inventions, and Executive will make such deletions and revisions as are reasonably requested by the Company to protect the Company's Confidential Information and Company Inventions. Executive will also obtain the written consent of the Company prior to any review of such material by persons outside the Company.

**Non-Solicitation Covenants.** Executive covenants and agrees that during a period of one (1) year Executive will not on behalf of Executive or directly or indirectly through another person or entity (including without limitation as a proprietor, owner, principal, agent, partner, officer, director, employee manager, member, consultant or otherwise):

Solicit, divert, take away, or otherwise attempt in any manner to solicit, divert, or take away , the business of any customer, supplier or other business relation of the Company or any of its Affiliates, that Executive knows, or reasonably should know, is a customer, supplier or other business relation of the Company, for a purpose that is related to a Restricted Business, or in any way interfere with the relationship between any such customer, supplier or other business relation and the Company or any of its Affiliates (Including, without limitation, inducing such person or entity to cease doing business with the Company or any of its Affiliates or making any negative statements or communications about the Company or any of its Affiliates); or:

Solicit or induce to leave the Company any person who Executive knows, or reasonably should know, is then an employee, consultant, or contractor of the Company or any of its Affiliates or who was an employee, consultant or contractor of the Company or any of its Affiliates (with respect to the Company's or any of its Affiliates business) at any time during the twelve-month period immediately preceding termination of Executive's employment with the Company. This does not apply to any contractors or consultants who or which has provided services to the other person or entity prior to the termination date or any individual whose employment was previously terminated by the Company or any Affiliate of the Company and, provided, further, the foregoing shall not apply to any general solicitation conducted through the use of advertisements in the media, through the use of search firms or other routine recruiting activities, provided that such searches are not specifically targeted at employee of the Company or any Affiliate of the Company.

**Agreement to Modify.** If the duration or scope of, or any business activity covered by, any provision of this agreement is in excess of what is determined to be valid and enforceable under applicable law, such

|  | Executive Confidentiality Assignment Agreement | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page 5 of 7 |

provision shall be construed to cover only that duration, scope or activity that is determined to be valid and enforceable. Executive hereby acknowledges that this agreement shall be given the construction which renders its provisions valid and enforceable to the maximum extent not exceeding its express terms, possible under applicable law.

Executive acknowledges and affirms that a breach of this agreement by Executive cannot be adequately compensated in an action for damages at law, and equitable relief would be necessary to protect the Company and its Affiliates from a violation of this Agreement and from the harm which this Agreement is intended to prevent. Accordingly, Executive agrees that in the event of any actual or threatened breach of such provisions, the Company and its Affiliates shall (in addition to any other remedies which they may have) be entitled to enforce their rights and executives obligations under this agreement not only by an action or actions for damages, but also by an action or actions for specific performance, temporary and/or permanent injunctive relief and/or other equitable relief in order to enforce or prevent any violations (whether anticipatory, continuing or future) of the provisions of this agreement by a period equal to (1) the length of the violation plus (2) the length of any court proceedings necessary to stop such violation and recover attorneys' fees and costs for the same, and such relief may be granted without the necessity of proving actual damages or the inadequacy of money damages, or posting bond.

**Survival**. Executives obligations under this Agreement will survive the termination of the Executive's employment with the Company regardless of the reason for the termination and whether the termination was voluntary or involuntary on the part of the Executive.

**Entire Agreement**. This Agreement sets forth the entire agreement between Executive and the Company related to the subject matter of this Agreement and supersedes any and all prior agreements or representations, written or oral, of Executive and the Company with respect to the subject matter of this Agreement. In the event of any direct conflict between any term of this Agreement and any term of any other agreement either written or oral, the terms of this Agreement will control, unless explicitly stated otherwise in a subsequent agreement.

**Governing Law**. This Agreement will be governed by and construed in accordance with the laws of the State of Colorado, without giving effect to any choice of law or conflicting provision or rule (whether of the State of Colorado, or any other jurisdiction) that would cause the laws of any jurisdiction other than the State of Colorado to be applied. In furtherance of the foregoing, the internal law of the State of Colorado will control the interpretation and construction of this Agreement, even if under such jurisdictions' choice of law of conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply.

**Jurisdiction and Venue**. The Company and Executive consent to exclusive jurisdiction of the courts of the State of Colorado and/or the federal district courts, District of Colorado, for the purpose of resolving all issues of law, equity, or fact arising out of or in connection with this Agreement. Any action involving claims of a breach of this Agreement or enforcement of this Agreement shall be brought exclusively in such courts. The Company and Executive each consent to personal jurisdiction in the state and/or

|  | **Executive Confidentiality Assignment Agreement** | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page 6 of 7 |

federal courts of Colorado and hereby waive any defense of lack of personal jurisdiction or inconvenient forum. Venue, for the purpose of all such suits, shall be in federal or state courts located in the City and county of Denver, Colorado.

**Amendments/Waiver.** No amendment or modification of this Agreement shall be deemed effective unless made in writing and signed by the parties hereto. No term or condition of this Agreement shall be deemed to have been waived, except by a statement in writing signed by the party against whom enforcement of the waiver is sought. Any written waiver shall not be deemed a continuing waiver unless specifically stated, shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

**Ability to Report or Communicate.** Nothing in this Agreement is intended to prevent or interfere with either party's ability to provide any required or reasonable communications to, or provide truthful information to, any governmental or law enforcement agency or representative, or in connection with any governmental investigation, court, administrative or other legal proceeding.

**Affiliates.** As used in this Agreement, the term "Affiliates" with respect to the Company, means and includes, without limitation, each person or entity which controls the Company, is controlled by the Company, or is under common control with the Company. For purposes of this definition, "control," "controlled by" and "under common control with," as applied to any person or entity, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that person or entity, whether through the ownership of voting securities, by contract or otherwise.

**Assignment.** Executive shall not assign Executive's rights or delegate Executive's obligations under this Agreement without the prior written consent of the Company. The Company may assign its rights or delegate its obligations to this Agreement without the consent of Executive.

**Notices.** Notices required to be given under this Agreement must be in writing and will be deemed to have been given when notice is personally served, one (1) business day after notice is sent by reliable overnight courier, or three (3) business days after notice is mailed by United States registered or certified mail, return receipt requested, postage prepaid, to the last known residence address of Executive or, in the case of the Company, to attention of the President, or to such other address as either party may have furnished to the other in writing in accordance herewith, except that notice of change of address will be effective only upon receipt by the other party.

**Severability.** In the event there is litigation involving this Agreement and a court of competent jurisdiction concludes that one or more provisions of this Agreement are invalid or unenforceable for whatever reason, the court shall have the authority to modify such provision(s) to make said provisions(s) enforceable, if possible, within the bounds of the parties' original intent that the Company be protected to the greatest extent allowed by law from unfair competition and/or the misuse or disclosure of trade secrets, proprietary and confidential information. The invalidity or unenforceability

|  | **Executive Confidentiality Assignment Agreement** | HR Policy |
|---|---|---|
| | | Rev 1 |
| | | Rev Date: 2/1/2021 |
| | | Page **7** of **7** |

of any particular provision of this Agreement shall not affect the remainder of the Agreement, which shall be construed in all respects as if any invalid or unenforceable provision was omitted. Further the unenforceability or invalidity of any provision of this Agreement shall not affect the validity or enforceability of the other provisions.

**Captions and Headings.** The captions and paragraph headings used in this Agreement are for convenience of reference only and shall not affect the construction or interpretation of this Agreement or any of the provisions hereof.

**Counterparts.** This Agreement may be executed in any number of counterparts, and such counterparts executed and delivered, each as an original, shall constitute but one and the same instrument.

**At-Will Employment.** <u>This Agreement is not a contract, guarantee or promise of employment for a definite period of time. Executive and the Company agree that their employment relationship is "at-will" meaning that the relationship can be terminated by Executive or by the Company with or without cause or reason, at any time, with or without notice.</u>

IN WITNESS WHEROF, the parties have caused this Agreement to be executed on the Effected Date above.

KIOSK INFORMATION SYSTEMS, INC.:

By: _(signature)_
Name: Kim Kenney
Title: President

EMPLOYEE SIGNATURE:

_(signature)_ Eric D Nelok