IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00352-RMR-KLM

KIOSK INFORMATION SYSTEMS, INC.,

    Plaintiff and Counterclaim Defendant,

vs.

COLE KEPRO INTERNATIONAL, LLC;
AMERICAN KIOSKS; ERIC NEBOLA; TAYLOR
LIGHTSEY; AND MICHAEL RASMUSSEN

    Defendants and Counterclaim Plaintiffs.

---

**PLAINTIFF AND COUNTERCLAIM DEFENDANT KIOSK INFORMATION SYSTEMS, INC.'S ANSWER TO COUNTERCLAIMS BY COUNTERCLAIM PLAINTIFFS AND DEFENDANTS COLE KEPRO INTERNATIONAL, LLC, ERIC NEBOLA, TAYLOR LIGHTSEY, AND MICHAEL RASMUSSEN**

---

    Plaintiff and Counterclaim Defendant KIOSK Information Systems Inc. ("KIOSK"), by and through its undersigned counsel, hereby respond to the numbered paragraphs of the Counterclaims brought by Counterclaim Plaintiffs and Defendants Cole Kepro International, LLC ("Cole Kepro"), Eric Nebola, Taylor Lightsey, and Michael Rasmussen (collectively, "Counterclaim Plaintiffs") as follows:

    Each and every allegation of the Counterclaims not specifically admitted herein is denied and the headings below are merely provided for convenience, because they or the portion included herein were used by Counterclaim Plaintiffs in their Counterclaims.

1

## INTRODUCTION

1. KIOSK admits that Messrs. Nebola, Lightsey, and Rasmussen worked as employees of KIOSK. Mr. Nebola was a KIOSK employee for over 18 years, Mr. Lightsey was a KIOSK employee for over 14 years, and Mr. Rasmussen was a KIOSK employee for over 23 years. KIOSK admits that Messrs. Nebola, Lightsey, and Rasmussen each willingly signed an Executive Confidentiality and Assignment Agreement (the "Agreements"). At the time that Messrs. Nebola, Lightsey, and Rasmussen signed their respective Executive Confidentiality and Assignment Agreement, KIOSK was unaware that any of them protested or unwillingly signed the Executive Confidentiality and Assignment Agreement. KIOSK denies all other allegations in Paragraph 1.

2. KIOSK admits that, in late 2021 and early 2022, Messrs. Nebola, Lightsey, and Rasmussen left KIOSK to work for Cole Kepro and American Kiosks. KIOSK admits that KIOSK has now sued Messrs. Nebola, Lightsey, Rasmussen, Cole Kepro, and American Kiosks. KIOSK denies all other allegations in Paragraph 2.

3. KIOSK denies that its interpretation of the Agreements is erroneous, that the Agreements are vague, overbroad, contrary to Colorado public policy, and unenforceable; and that none of the Counterclaim Plaintiffs breached the Agreements. KIOSK denies that Mr. Nebola and Mr. Lightsey are owed any wages by KIOSK.

## PARTIES

4. Upon information and belief, KIOSK admits the allegations in Paragraph 4.

5. Upon information and belief, KIOSK admits that Mr. Nebola works for Cole Kepro and American Kiosks and is a resident of Colorado.

6. Upon information and belief, KIOSK admits that Mr. Lightsey works for Cole Kepro and American Kiosks and is a resident of Colorado.

7. Upon information and belief, KIOSK admits Mr. Rasmussen works for Cole Kepro and American Kiosks and is a resident of Colorado.

8. KIOSK admits the allegations in Paragraph 8.

## JURISDICTION AND VENUE

9. For the purposes of this action only, KIOSK does not contest that this Court has subject matter jurisdiction over Counterclaim Plaintiffs' Counterclaims.

10. KIOSK does not contest venue for purposes of this action.

11. KIOSK does not contest personal jurisdiction for purposes of this action.

## FACTUAL ALLEGATIONS

12. KIOSK admits the allegations in Paragraph 12.

13. KIOSK admits the allegations in Paragraph 13.

14. KIOSK admits the allegations in Paragraph 14.  In his role as a Vice President of Sales, Mr. Nebola had access to KIOSK confidential and trade secret information.

15. KIOSK admits the allegations in Paragraph 15.

16. KIOSK admits the allegations in Paragraph 16.

17. KIOSK admits the allegations in Paragraph 17.

18. KIOSK denies the allegations in Paragraph 18.  At the time of his departure, Mr. Lightsey was a Director of Product Management.  In his role as a Director of Product Management, Mr. Lightsey had access to KIOSK confidential and trade secret information.

19. KIOSK admits the allegations in Paragraph 19.

20. KIOSK admits the allegations in Paragraph 20.

21. KIOSK admits the allegations in Paragraph 21.

22. KIOSK admits the allegations in Paragraph 22.

3

23. KIOSK admits that Mr. Rasmussen's role at KIOSK was not an "executive position," however in his role as a Prototype Systems Manager, Mr. Rasmussen had access to KIOSK confidential and trade secret information.

24. KIOSK admits that Messrs. Nebola, Lightsey, and Rasmussen each signed an Executive Confidentiality Assignment Agreement.  KIOSK denies that it "forced" Messrs. Nebola, Lightsey, and Rasmussen to sign the Agreements.

25. KIOSK admits the allegations in Paragraph 25.

26. KIOSK denies the allegations in Paragraph 26.  No threats of termination were made.

27. KIOSK admits the allegations in Paragraph 27.

28. KIOSK admits that Mr. Nebola signed the Agreement on February 22, 2021, and that Exhibit A is a copy of the Agreement.  KIOSK denies that Mr. Nebola was "faced with no other choice."

29. KIOSK admits that Mr. Lightsey signed the Agreement on March 3, 2021, and that Exhibit B is a copy of the Agreement.  KIOSK denies that Mr. Lightsey was "faced with no other choice."

30. KIOSK admits that Mr. Rasmussen signed the Agreement on February 22, 2021, and that Exhibit C is a copy of the Agreement.  KIOSK denies that Mr. Rasmussen was "faced with no other choice."

31. Paragraph 31 asserts a legal conclusion to which no response is required.  To the extent a response is required, KIOSK states that the Agreements speak for themselves and denies the remaining allegations in Paragraph 31.

32. Paragraph 32 asserts a legal conclusion to which no response is required.  To the extent a response is required, KIOSK admits that there are no non-compete provisions in the Agreements.

33. Paragraph 33 asserts a legal conclusion to which no response is required. To the extent a response is required, KIOSK states that the Agreements speak for themselves and denies the remaining allegations in Paragraph 33.

34. Paragraph 34 asserts a legal conclusion to which no response is required. To the extent a response is required, KIOSK states that the Agreements speak for themselves and denies the remaining allegations in Paragraph 34.

35. Paragraph 35 asserts a legal conclusion to which no response is required. To the extent a response is required, KIOSK states that the Agreements speak for themselves and denies the remaining allegations in Paragraph 35.

36. KIOSK denies the Allegations in Paragraph 36. KIOSK's Human Resources Director, Dawn Van Winkle, scheduled meetings to discuss the Agreements with each department. At these meetings, Ms. Van Winkle went through the Agreements and explained what was covered by the Agreements and encouraged KIOSK employees, including Messrs. Nebola, Lightsey, and Rasmussen, to approach her with questions.

37. KIOSK denies the allegations in Paragraph 37. At the meetings discussed in KIOSK's response to Paragraph 36, Ms. Van Winkle encouraged KIOSK employees, including Messrs. Nebola, Lightsey, and Rasmussen, to consult with an attorney regarding the Agreements.

38. KIOSK admits the allegations in Paragraph 38.

39. KIOSK denies the allegations in Paragraph 39. At the time of Mr. Nebola's departure from KIOSK, KIOSK reviewed KIOSK's payroll program, Paylocity, and Mr. Nebola's electronic calendar to determine the appropriate amount of vacation time Mr. Nebola actually took off because he failed to properly record all his vacation time. At the time of Mr. Nebola's departure, Mr. Nebola had failed to report at least 7 days (56 hours) of vacation time he took off. As such, Mr. Nebola had less than 106.3 hours of accrued, unused vacation time at the time of his resignation.

4879-3299-9531

40. KIOSK denies the allegations in Paragraph 40. KIOSK paid Mr. Nebola $7,665.88 for 106.3 hours of accrued, unused vacation time based on his hourly rate conversion of $72.12. Because Mr. Nebola had less than 106.3 hours of accrued, unused vacation time at the time of his resignation, he was overpaid by KIOSK.

41. KIOSK denies the allegations in Paragraph 41. At the time of Mr. Lightsey's departure from KIOSK, KIOSK reviewed KIOSK's payroll program, Paylocity, and Mr. Lightsey's electronic calendar to determine the appropriate amount of vacation Mr. Lightsey actually took off because he failed to properly record all his vacation time. At the time of Mr. Lightsey's departure, Mr. Lightsey had failed to report at least 15 days (120 hours) of vacation time he took off. As such, Mr. Lightsey had less than 81 hours of accrued, unused vacation time at the time of his resignation.

42. KIOSK denies the allegations in Paragraph 42.

43. KIOSK admits that it received a payment demand on May 25, 2023, but denies any payment is due.

44. KIOSK denies the allegations of Paragraph 44 and incorporates by reference herein its response to Paragraph 40.

45. KIOSK denies the allegations in Paragraph 45. KIOSK paid Mr. Lightsey $5,172.15 for 81 hours of accrued, unused vacation time based on his hourly rate conversion of $63.75. Because Mr. Lightsey had less than 81 hours of accrued, unused vacation time at the time of his resignation, he was overpaid by KIOSK.

46. KIOSK admits the allegations in Paragraph 46.

47. KIOSK admits that Cole Kepro manufactures kiosks for commercial use. KIOSK lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 47 and on that basis denies them.

48. KIOSK admits the allegations in Paragraph 48.

49. KIOSK admits the allegations in Paragraph 49.

## First Claim for Relief:

## (By All Counterclaim Plaintiffs)

## Declaratory Judgment, 28 U.S.C. §§ 2201, et seq.

50. KIOSK reasserts and incorporates by reference its responses to the paragraphs above.

51. The allegations in Paragraph 51 appear to be legal arguments to which no response is required. To the extent a further response is required KIOSK denies that the Agreements are vague, overbroad, contrary to the public policy of the State of Colorado, and unenforceable.

52. The allegations in Paragraph 52 appear to be legal arguments to which no response is required. To the extent a further response is required KIOSK denies that its interpretation of the Agreements is incorrect, that Messrs. Nebola, Lightsey, and Rasmussen have not violated the Agreements, and that Cole Kepro has not tortiously interfered with the Agreements.

53. The allegations in Paragraph 53 appear to be legal arguments to which no response is required. To the extent a further response is required KIOSK admits that a controversy between the parties exists.

54. KIOSK admits the allegations in Paragraph 54.

55. The allegations in Paragraph 55 appear to be legal arguments to which no response is required. To the extent a further response is required, KIOSK denies the allegations.

4879-3299-9531

**Second Claim for Relief:**

**(By Nebola and Lightsey)**

**Wage Claim Act Violations, C.R.S. §§ 8-4-101, et seq.**

56. KIOSK reasserts and incorporates by reference its responses to the paragraphs above.

57. KIOSK admits the allegations in Paragraph 57.

58. KIOSK admits the allegations in Paragraph 58. Messrs. Nebola and Lightsey were also paid commissions on top of their salaries, when applicable.

59. KIOSK denies the allegations in Paragraph 59. Under KIOSK's policies, employees could accrue up to 200 hours of paid time off.

60. KIOSK admits the allegations in Paragraph 60.

61. KIOSK denies the allegations in Paragraph 61. At the time of Mr. Nebola's departure from KIOSK, KIOSK reviewed KIOSK's payroll program, Paylocity, and Mr. Nebola's electronic calendar to determine the appropriate amount of vacation time KIOSK needed to pay out. At the time of Mr. Nebola's departure, it appeared that he had accrued 156.11 hours of vacation time, but cross checking this number with his electronic calendar, it became clear to KIOSK that Mr. Nebola had failed to enter at least 7 days (56 hours) of vacation time into Paylocity. As such, Mr. Nebola had less than 106.3 hours of accrued, unused vacation time at the time of his resignation.

62. KIOSK admits the allegations in Paragraph 62.

63. KIOSK denies the allegations in Paragraph 63. At the time of Mr. Lightsey's departure from KIOSK, KIOSK reviewed KIOSK's payroll program, Paylocity, and Mr. Lightsey's electronic calendar to determine the appropriate amount of vacation time KIOSK needed to pay out. At the time of Mr. Lightsey's departure, it appeared that he had accrued 200 hours of vacation time, but cross checking this number with his electronic calendar, it became

clear to KIOSK that Mr. Lightsey had failed to enter at least 15 days (120 hours) of vacation time into Paylocity. As such, Mr. Lightsey had less than 81 hours of accrued, unused vacation time at the time of his resignation.

64. KIOSK denies the allegations in Paragraph 64. KIOSK paid Mr. Nebola $7,665.88 for 106.3 hours of accrued, unused vacation time based on his hourly rate conversion of $72.12. Because Mr. Nebola had less than 106.3 hours of accrued, unused vacation time at the time of his resignation, he was overpaid by KIOSK.

65. KIOSK denies the allegations in Paragraph 65. KIOSK paid Mr. Lightsey $5,172.15 for 81 hours of accrued, unused vacation time based on his hourly rate conversion of $63.75. Because Mr. Lightsey had less than 81 hours of accrued, unused vacation time at the time of his resignation, he was overpaid by KIOSK.

66. Paragraph 66 appears to contain legal arguments to which no response is required. To the extent a further response is required, KIOSK denies the allegations in Paragraph 66.

67. Paragraph 67 appears to contain legal arguments to which no response is required. To the extent a further response is required, KIOSK denies that it failed to pay Mr. Nebola and Mr. Lightsey for their paid time off and denies the remaining allegations in Paragraph 67.

68. KIOSK admits that it received a demand letter from counsel for Mr. Nebola and Mr. Lightsey, but KIOSK denies the allegations contained therein.

69. KIOSK denies the allegations in Paragraph 69. KIOSK responded to the demand letter on June 6, 2023—the date these Counterclaims were filed.

70. KIOSK denies that it failed to pay Mr. Nebola and Mr. Lightsey their accrued paid time off at the time of their resignations, and on that basis denies the allegations of Paragraph 70.

9

71.     KIOSK denies that it failed to pay Mr. Nebola and Mr. Lightsey their accrued paid time off at the time of their resignations, and on that basis denies the allegations of Paragraph 71.

72.     KIOSK denies that it has violated the Colorado Wage Claim Act and on that basis denies the allegations of Paragraph 72.

## RESPONSE TO PRAYERS FOR RELIEF

The Prayer For Relief appears to contain legal arguments to which no response is required.  To the extent a further response is required, KIOSK denies that any of the relief in the Prayer For Relief should be awarded.

## RESPONSE TO JURY DEMAND

No response from KIOSK is required.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.      Counterclaim Plaintiffs' Counterclaims fail to state a claim upon which relief may be granted.

### Second Affirmative Defense

2.      Counterclaim Plaintiffs' Counterclaims are barred, in whole or in part, by the doctrine of laches, waiver, release, and/or estoppel.

### Third Affirmative Defense

3.      Counterclaim Plaintiffs' Counterclaims are barred, in whole or in part, as Counterclaim Defendant has complied with the Colorado Wage Claim Act.

### Fourth Affirmative Defense

4.      At all times, Counterclaim Defendant acted in good faith and had reasonable grounds for believing its actions were in compliance with the Colorado Wage Claim Act.

### Fifth Affirmative Defense

5.       Counterclaim Plaintiffs are not entitled to punitive or liquidated damages as Counterclaim Defendant did not act in a manner which gives rise to punitive or liquidated damages.

### Sixth Affirmative Defense

6.       Counterclaim Plaintiffs' Counterclaims are barred, in whole or in part, by the doctrine of unclean hands.

### Seventh Affirmative Defense

7.       Counterclaim Defendant reserves the right to assert further affirmative defenses as they become evident through discovery and investigation.

Dated: June 27, 2023               Respectfully submitted,

                                    */s/ David J. Tsai*
                                    David J. Tsai
                                    John Steger
                                    Natalie Truong
                                    Pillsbury Winthrop Shaw Pittman LLP
                                    Four Embarcadero Center, 22nd Floor
                                    San Francisco, CA  94111-5998
                                    Telephone:  415.983.1000
                                    Facsimile:   415.983.1200

                                    Attorneys for Plaintiff and Counterclaim Defendant KIOSK Information Systems, Inc.

4879-3299-9531

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on all parties who have appeared in this case via the Court's CM/ECF system.

Dated:  June 27, 2023

                                                */s/ David J. Tsai*
                                                David J. Tsai

4879-3299-9531