IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00352-GPG-KLM

KIOSK INFORMATION SYSTEMS, INC.,

      Plaintiff,

v.

COLE KEPRO INTERNATIONAL, LLC,
AMERICAN KIOSKS,
ERIC NEBOLA,
TAYLOR LIGHTSEY, and
MICHAEL RASMUSSEN,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Partial Motion to Dismiss** [#22] (the "Motion").  Plaintiff filed a Response [#32] in opposition to the Motion [#22], and Defendants filed a Reply [#35].  Pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c), the Motion [#22] has been referred to the undersigned for a recommendation regarding disposition.  *See* [#25].  The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth the below, the Court respectfully **RECOMMENDS** that the Motion [#22] be **GRANTED in part** and **DENIED in part**.

**I. Background[1]**

_____

[1]  All well-pled facts from the Complaint [#1] are accepted as true and viewed in the light most favorable to Plaintiff as the nonmovant.  *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

Plaintiff is a Colorado-based manufacturer of self-service kiosk machines. *Compl.* [#1] ¶ 3. Plaintiff "designs, manufactures, develops software, and provides support for standard and customized self-service kiosk machines." *Id*. ¶ 21. Plaintiff greatly values its intellectual property, namely the "trade secrets that it carefully developed over the course of nearly 30 years." *Id*. ¶ 23. At all times, Plaintiff has made "reasonable efforts to protect its trade secrets and other proprietary and confidential information with respect to its business, employees, customers, products, and services, including technical and pricing information regarding its products and market intelligence." *Id*. ¶ 25.

Defendants Eric Nebola ("Nebola") and Taylor Lightsey ("Lightsey") were employed by Plaintiff and served as Vice President of Sales and Director of Product Management, respectively. *Id*. ¶ 3. Defendant Michael Rasmussen ("Rasmussen") was employed by Plaintiff as a Prototype Systems Manager. *Id*. Defendants Nebola, Lightsey, and Rasmussen (collectively, "Employees") worked for Plaintiff for eighteen, fourteen, and twenty-four years respectively.[2] *Id*. ¶¶ 30, 14, 34. During their time working for Plaintiff, Defendant Employees had access to Plaintiff's confidential and proprietary information and trade secrets. *Id*. ¶¶ 31, 33, 35. Because of their knowledge of Plaintiff's proprietary information and trade secrets, Defendant Employees were required to enter into Executive Confidentiality Assignment Agreements ("Confidentiality Agreements"). *Id*. ¶ 36. The Confidentiality Agreements contained Non-Solicitation Covenants and Executives Use of Confidential Information clauses. *Id*. ¶¶ 39-40.

Defendant Cole Kepro International, LLC ("Cole Kepro") is a Nevada-based limited liability company with its principal place of business located in Las Vegas, Nevada. *Id*. ¶

---

[2] Plaintiff notes that Defendant Rasmussen had a break in employment from February to December 2015. *Compl.* [#1] ¶ 34.

13.  In August 2021, Defendant Nebola began meeting with Defendant Cole Kepro about an employment opportunity.  *Id*. ¶¶ 41-57.  Defendant Cole Kepro also sought to hire Defendant Lightsey.  *Id*.

In Fall 2021, Defendants Nebola and Lightsey, still employed by Plaintiff, were engaged in negotiations with Bitcoin of America ("BOA") to purchase kiosk units from Plaintiff.  *Id*. ¶¶ 49-57.  Defendant Lightsey was involved with the development of a kiosk prototype for BOA.  *Id*. ¶ 10.  Defendant Nebola had comprehensive knowledge of the component prices and costs associated with the BOA prototype.  *Id*.  In October 2021, Defendants Nebola and Lightsey advised BOA executives that they were leaving Plaintiff for a competitor and that BOA should not place its order with Plaintiff.  *Id*. ¶ 57.  Because of Defendants Nebola and Lightsey's statements, BOA did not place its full order with Plaintiff but rather split the order between Plaintiff and Defendant Cole Kepro.  *Id*. ¶ 64.

Defendants Nebola and Lightsey resigned from Plaintiff on October 11 and 16, 2021, respectively.  *Id*. ¶¶ 58-59.  In November 2021, Defendant Cole Kepro registered American Kiosks as the trade name under which Defendant Cole Kepro would be manufacturing and selling kiosks in Colorado. *Id*. ¶ 60.  Defendants Nebola and Lightsey became the President and Vice President respectively of Defendant American Kiosks and opened offices near Plaintiff's main offices in Colorado.  *Id*. ¶ 6.  After Defendants Nebola and Lightsey's resignations, Plaintiff's counsel informed Defendants Nebola, Lightsey, Cole Kepro, and American Kiosks of Defendants Nebola and Lightsey's "continuing obligations" to Plaintiff.  *Id*. ¶ 7.

In May 2022, Defendants Nebola and Lightsey recruited Defendant Rasmussen to come work for Defendant American Kiosks as Product Operations Manager.  *Id*. ¶ 66.

Defendant Rasmussen left Plaintiff for Defendant American Kiosks in June 2022. *Id*. ¶ 3. After Defendant Rasmussen began working for Defendants Cole Kepro and American Kiosks (collectively, "Entities"), Plaintiff's counsel again expressed concern to the two Defendant Entities about the three Defendant Employees taking trade secrets with them. *Id*. ¶ 9.

Defendant Entities subsequently designed a "substantially similar" kiosk to the one that Plaintiff had designed for BOA. *Id*. ¶ 69. The design incorporated nearly all the components that Plaintiff had quoted to BOA. *Id*. Defendant Entities' design utilized the components in a similar layout to Plaintiff's prototype, as well. *Id*. ¶ 70. Further, Defendant American Kiosks' marketing website features substantially similar language and presentation to that of Plaintiff's website. *Id*. ¶ 71.

As a result of these and other allegations, Plaintiff asserts multiple claims against Defendants: (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Claim V); (2) trade secret misappropriation under the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-101 (Claim VI); and (3) various common law claims under Colorado law (Claims I-IV, VII-X). *Compl*. [#1] ¶¶ 81, 87, 94, 99, 108-109, 121-122, 136, 144, 148. Plaintiff seeks injunctive relief, as well as compensatory and punitive damages. *Id*. at 34. In the Motion [#22], Defendants seek partial dismissal of claims pursuant to Fed. R. Civ. P. 12(b)(6) as follows:

Claim I: Breach of Contract, in part, concerning only the Non-Solicitation Covenants against Defendants Nebola, Lightsey, and Rasmussen;

Claim II: Breach of the Duty of Good Faith and Fair Dealing, in full, against Defendants Nebola and Lightsey;

Claim III: Intentional Interference with Contract, in part, against Defendant Cole

Kepro;[3]

Claim IV: Tortious Interference with Prospective Business Advantage, in part, against Defendants Nebola and Lightsey;

Claim V: Violation of the DTSA, in full, against all Defendants;

Claim VI: Violation of the CUTSA, in full, against all Defendants;

Claim VII: Unjust Enrichment, in part, against Defendants Nebola and Lightsey;

Claim VIII: Common Law Unfair Competition, in full, against all Defendants;

Claim IX: Breach of Duty of Loyalty, in full, against Defendants Nebola, Lightsey, and Rasmussen; and

Claim X: Breach of Fiduciary Duty, in full, against Defendants Nebola and Lightsey.

## II.  Legal Standard

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Servs.,*

*Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, [n]or does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

### III.  Analysis[4]

#### A.    Claim V: DTSA

Plaintiff asserts its DTSA claim against all Defendants. *Compl.* [#1] ¶¶ 100-113. Defendants seek dismissal of this claim as to all Defendants. *Motion* [#22] at 11.

Plaintiff alleges that Defendant Employees used its protected trade secrets without consent to the benefit of Defendant Entities. *Compl.* [#1] ¶ 108. Plaintiff avers that Defendant Employees knew or should have known that disclosing such information was in violation of the Confidentiality Agreements and that Defendant Entities knew or should have known that the use of such information was improper. *Id*. ¶¶ 108-109.

Under the DTSA, an owner of a trade secret which is misappropriated may bring a civil action if the trade secret related to a product used in interstate commerce. 18 U.S.C. § 1836(b)(1). A plaintiff asserting a DTSA claim must allege:

> (1) the existence of a trade secret that relates to a product or service used in, or intended for use in, interstate or foreign commerce; (2) the acquisition

---

[4]   Defendants generally seek full dismissal of all claims asserted against Defendant Rasmussen because they argue that Plaintiff failed to "specifically allege any wrongdoing by him." *Motion* [#22] at 16-17. The Court finds below that Plaintiff sufficiently alleges at least some specific purported wrongdoing by Defendant Rasmussen and therefore addresses the merits of each claim against Defendant Rasmussen individually.

of the trade secret, or the use or disclosure of the trade secret without consent; and (3) the person acquiring, using, or disclosing the trade secret knew or had reason to know that the trade secret was acquired by improper means.

*DTC Energy Grp., Inc. v. Hirshfeld*, 420 F. Supp. 3d 1163, 1175-1176 (D. Colo. 2019) (quoting *Arctic Energy Servs., LLC v. Neal*, No. 18-cv-00108-PAB-KLM, 2018 WL 1010939, at *2 (D. Colo. Feb. 22, 2018)).  The DTSA defines "trade secret" broadly as:

all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible . . . [if] the owner thereof has taken reasonable measures to keep such information secret; and . . . [a person] use[s] a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret . . . .

18 U.S.C. § 1839(3)-(5).

Here, Defendants first argue that Plaintiff has not pled which trade secrets were allegedly misappropriated with the requisite specificity.  *Motion* [#22] at 6.  A plaintiff must "identify the trade secrets with enough specificity to put defendants on notice."  *Hauschild GMBH & Co. KG v. FlackTek, Inc.*, No. 20-cv-02532-PAB-STV, 2022 WL 392501, at *9 (D. Colo. Feb. 2, 2022) (holding that merely referring broadly to "information" regarding customers was insufficient to state a claim).  A plaintiff does not need to identify specific file names or documents which the defendants allegedly misappropriated in order to state a claim.  *Id*.  Simply identifying specific categories of documents and information allegedly misappropriated is sufficient to identify trade secret information at the motion to dismiss stage.  *Id*.  A plausible DTSA claim requires identifying trade secrets such as "customer and vendor lists, preferences, order histories, pricing strategies, [and] terms of contracts . . . ."  *Id*. at *10; *see also Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians,*

*Inc.*, No. 17 C 1136, 2017 WL 3235682, at *3 (N.D. Ill. July 31, 2017) (holding that allegations of exposure to "customer account information, product summaries, pricing sheets, product prototypes, product designs, and detailed sales reports" were sufficient to state a DTSA claim).  "The cases rejecting trade secret claims for lack of specificity are predominantly at later stages in the litigation process."  *SMB Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012).  At the motion to dismiss stage, courts dismiss a trade secrets claim for lack of specificity only in the "most extreme cases" where the claimant merely recites statutory language.  *See id*.

In the Complaint [#1], Plaintiff specifically alleges that Defendant Lightsey had knowledge of "component selection . . . detailed costing analysis, and margin models for the proposed kiosk for BOA."  *Compl.* [#1] ¶ 10.  Defendant Nebola "worked closely with pricing and gained invaluable knowledge of the component prices and costs associated with the prototype for BOA."  *Id*.  Further, Defendant Rasmussen, in his role as Prototype Systems Manager, had access to "engineering specifications for custom products, product configuration, and new prototype information."  *Id*. ¶ 35.  Based on these allegations, the Court finds that Plaintiff has pled sufficient facts about the specific categories of information which they are alleging Defendants misappropriated.  The Court therefore turns to Defendants' argument regarding whether the alleged misappropriated information constitutes protected trade secrets.  *Motion* [#22] at 7; *Reply* [#22] at 3.

Here, Defendants argue that Plaintiff fails to allege that the BOA kiosk design is a trade secret.  *Motion* [#22] at 7.  Defendants argue that visual kiosk design cannot be a trade secret because the kiosks are displayed publicly for anyone to see, and the components are standard in the industry.  *Id*.  Defendants further argue that Plaintiff has

not pled sufficient facts to find that design and pricing are trade secrets because the industry leader in kiosk design advertises design and pricing on their website. *Id*.

The Court is not persuaded by this argument.  Plaintiff does not allege that Defendants misappropriated trade secret product information in connection with a publicly marketed kiosk, but rather that Defendant Employees used their knowledge of the BOA deal and prototype specifications to benefit Defendant Entities.  *Compl*. [#1] ¶¶ 69-70. The BOA kiosk design that Defendants allegedly copied had not been released on the market.  *See id.* ¶ 69 (stating that incorporated components were nearly all those "quoted" to BOA and Plaintiff's design was a "proposed design").  Further, Plaintiff states that it used reasonable measures to protect proprietary and confidential information through policies and procedures such as confidentiality agreements, secure buildings and IT systems, and audits of departing employees.  *Id*. ¶ 26.  Therefore, the Court finds that Plaintiff has pled sufficient facts to state a claim that the information at issue constituted protected trade secrets.[5]

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **denied** to the extent that Defendants seek dismissal of Claim V under the DTSA.

**B.     Claim VI: CUTSA**

Plaintiff asserts its CUTSA claim against all Defendants.  *Compl*. [#1] ¶ 114-124. Defendants seek dismissal of this claim as to all Defendants.  *Motion* [#22] at 11.

---

[5]  Defendants do not argue that Plaintiff's allegations fail to meet any of the elements of a DTSA claim other than the first element.  *See Motion* [#22] at 11-16.  The Court notes that, in connection with the intentional interference with contract claim (Claim III), Defendants argue that Defendant Cole Kepro was not aware of the obligations of Defendant Employees under their Confidentiality Agreements.  *Id*. at 23-24.  This argument could also potentially impact the third element of the DTSA claim. *See Arctic Energy Servs.*, 2018 WL 1010939, at *3 (holding that knowledge of improper means was required for the third element).  However, because Defendants do not raise the issue under the DTSA specifically, the Court does not address it here either.

Like the allegations under the DTSA, Plaintiff alleges that Defendants violated the CUTSA when they misappropriated trade secrets owned by Plaintiff. *Compl.* [#1] ¶¶ 119-121.  Defendants argue that Plaintiff failed to plead sufficient facts to show that the allegedly misappropriated information constituted trade secrets under the CUTSA. *Motion* [#22] at 6-11.

Under the CUTSA, a trade secret is defined as "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value."  Colo. Rev. Stat. § 7-74-102(4).  Further, to constitute a trade secret, the owner of the trade secret "must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."  *Id.*  As discussed above, the Court finds that Plaintiff pled facts with enough specificity to state a claim for misappropriation of trade secrets. *See id.*; *see, e.g.*, *R & D Bus. Sys. v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993) (holding that "parts and supplies sources, research and development efforts, market strategy, and customer lists" constitute trade secrets under Colorado law).  Further, Plaintiff has sufficiently pled facts to support its claim that it "prevented the secret from becoming available."  Colo. Rev. Stat. § 7-74-102(4); *Compl.* [#1] ¶¶ 25-28.  Therefore, the Court finds that Plaintiff has sufficiently pled facts to state a claim under the CUTSA.

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **denied** to the extent that Defendants seek dismissal of Claim VI under the CUTSA.

## C.    Claim I: Breach of Contract

Plaintiff asserts the breach of contract claim against Defendants Nebola, Lightsey, and Rasmussen but does not allege that Defendant Rasmussen violated the Non-Solicitation Covenant of his agreement.  *Compl.* [#1] ¶ 74, 76.  Defendants seek dismissal of this claim as to Defendants Nebola and Lightsey only, and only to the extent that they violated the Non-Solicitation Covenant.  *Motion* [#22] at 17-20.

Plaintiff alleges that Defendants Nebola and Lightsey violated the Non-Solicitation Covenants of their Confidentiality Agreements.  *Compl.* [#1] ¶ 76.  The Non-Solicitation Covenants state that the employee will not:

> during a period of one (1) year . . . solicit, divert, [or] take away . . . the business of any customer, supplier or other business relation of the Company . . . that Executive knows . . . is a customer, supplier or other business relation of the Company . . . or: Solicit or induce to leave the Company any person who Executive knows . . . is then an employee . . . of the Company . . . at any time during the twelve-month period immediately preceding termination of Executive's employment with the Company.

*See, e.g.*, *Ex 1* [#1-1] at 5; *Ex. 2* [#1-2] at 5.[6]  Both agreements, for Defendants Nebola and Lightsey, contain the exact same Non-Solicitation Covenants.  *See Ex 1* [#1-1] at 5; *Ex. 2* [#1-2] at 5.  Plaintiff alleges that Defendant Nebola breached the Confidentiality Agreement when he solicited Defendant Lightsey to leave his employment and further alleges that the two men violated their agreements when they recruited Defendant

---

[6] Plaintiff attaches copies of the Confidentiality Agreements to its Complaint [#1].  *See Ex. 1* [#1-1]; *Ex. 2* [#1-2]; *Ex. 3* [#1-3].  Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, "in deciding a motion to dismiss pursuant to [Fed. R. Civ. P. 12(b)(6)], [the] [C]ourt may look both to the complaint itself and to any documents attached as exhibits to the complaint."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").  Here, the Confidentiality Agreements are central to Plaintiff's claim and are attached to the Complaint as Exhibit 1 and Exhibit 2.  *See* [#1-1] at 5; [#1-2] at 5.  Accordingly, the Court has reviewed the Agreements for the purposes of resolving the present Motion [#22].

Rasmussen to work for Defendant American Kiosks.  *Compl.* [#1] ¶¶ 77-78.  Defendants argue that the Non-Solicitation Covenant is ambiguous because it states that "during a period of one (1) year" the employee will not cause another person, whom he knows is an employee of Plaintiff, to leave the company.  *Motion* [#22] at 18.  Defendants argue that the provision is effective for one year from the date that the contract was executed, not one year from the date on which Defendants left the company. *Id.* at 18-19.  Defendants argue that the ambiguity should be construed in a light most favorable to the employee and thus the Non-Solicitation Clause expired before Defendants Nebola and Lightsey recruited Defendant Rasmussen.  *Id.*

A contract term is ambiguous if the term is "susceptible to more than one reasonable interpretation." *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).  "The question of whether a contract is ambiguous is also a question of law for the court." *Zurich Am. Ins. Co. v. Dillon Cos., LLC*, 595 F. Supp. 3d 1003, 1007 (D. Colo. 2022) (citing *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313-1314 (Colo. 1984)).  Where a contract term is unambiguous, the Court may not look beyond the four corners of the document to determine the intent of the parties. *Id.*

Here, the Court finds that the contract is unambiguous on its face.  The Non-Solicitation Covenant states that the executive will not, "during a period of one (1) year . . . induce to leave the Company any person who Executive knows . . . is then an employee . . . during the twelve-month period immediately preceding termination of Executive's employment . . . ." *Ex. 1* [#1-1] at 5; *Ex. 2* [#1-2] at 5.  If the clause was intended to run from the effective date of the contract, then there would be no reason to add the

"preceding termination" to the end of the sentence.  In that case, simply stating that solicitation of employees was prohibited for one year would be sufficient to prevent the executive from soliciting employees.  However, because the Covenant contains the clause "immediately preceding termination," it is clear that the language unambiguously reflects the parties' intention to prevent executives from soliciting current employees of Plaintiff after their departure.  Therefore, the Court finds that Plaintiff sufficiently pleads facts to support the claim that Defendants Nebola and Lightsey violated the Non-Solicitation Covenants of their Confidentiality Agreements.

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **denied** to the extent that Defendants seek dismissal of the breach of contract claim (Claim I).

**D.     Claim II: Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff asserts breach of implied covenant of good faith and fair dealing against only Defendants Nebola and Lightsey.  *Compl.* [#1] ¶ 86.  Defendants seek dismissal of the implied covenant claim against Defendants Nebola and Lightsey in full.  *Motion* [#22] at 21-23.

Plaintiff alleges that Defendants Nebola and Lightsey violated the covenant of good faith and fair dealing that was implied in their Confidentiality Agreements.  *Compl.* [#1] ¶ 86.  Plaintiff asserts that Defendants Nebola and Lightsey used the discretion afforded to them by the Confidentiality Agreements to deprive Plaintiff of the benefit of the contracts.  *Id*.  Defendants argue that the implied covenant of good faith and fair dealing is inapplicable to the Confidentiality Agreements because the agreements do not allow for any discretion.  *Motion* [#22] at 21-22.

"Every contract in Colorado contains an implied duty of good faith and fair dealing."

*McDonald v. Zions First Nat'l Bank, N.A.*, No. 14CA0182, 2015 WL 1090177, at *9 (Colo. App. Mar. 12, 2015) (citation omitted).  "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract."  *Id.* (quoting *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006)).   A plaintiff is only permitted to rely on this duty "when the manner of performance under a specific contract term allows for discretion on the part of either party."   *McDonald*, 2015 WL 1090177, at *9 (citation omitted).   "Discretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation."   *Id.* (quoting *City of Golden*, 138 P.3d at 292 (citation omitted)).

"Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'"   *McDonald*, 2015 WL 1090177, at *9 (quoting *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (citation omitted)).   "Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance."   *McDonald*, 2015 WL 1090177, at *9 (citation omitted).   "When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached."   *Id.* (citation omitted).

Here, Plaintiff alleges that Defendants Nebola and Lightsey had discretion under the Confidentiality Agreements because Plaintiff entrusted them with access to trade secret customer information and allowed them to build relationships on behalf of Plaintiff. *Compl.* [#1] ¶ 85.   However, the Executives' Use of Confidential Information provision states that the executive will not "without Company's prior written consent" disclose or

use confidential information belonging to Plaintiff.  *Ex. 1* [#1-1] at 3; *Ex. 2* [#1-2] at 3.  This language does not allow for any discretion in the manner of performance on the part of Defendants Nebola and Lightsey.  *See Amoco*, 908 P.2d at 498-499 (holding that good faith performance occurs when one party has the discretion to modify terms of a contract). The Court is not persuaded by Plaintiff's statement that Defendants Nebola and Lightsey had discretion under the Confidentiality Agreements because of their job duties. Defendants Nebola and Lightsey had access to confidential information during their employment with Plaintiff because Plaintiff permitted such access.  The Complaint insufficiently alleges that the parties' agreements gave the Defendants any discretion to act regarding the trade secrets during their employment.  In addition, there is no allegation that Defendants Nebola and Lightsey had discretion to use trade secrets after they left the company.  Moreover, there are no allegations that Defendants Nebola and Lightsey obtained Plaintiff's consent to divert BOA's business while still employed by Plaintiff.  That violation, as alleged, may have been a breach of contract but was not an exercise of discretion.  Plaintiff had sole control over the dissemination of information. *See id*. (stating that discretion in performance refers to control over performance after contract formation). Finally, every alleged post-termination theft of trade secrets could give rise to a claim for breach of the implied covenant of good faith and fair dealing if the alleged theft alone was deemed to be an actionable discretionary act.  The law does not construe the covenant so broadly.  Therefore, the Court finds that Plaintiff has failed to sufficiently plead facts to support a claim for relief based on the implied covenant of good faith and fair dealing.[7]

---

[7]  Defendants further argue that the claim for breach of the implied covenant is duplicative. *Motion* [#22] at 22-23.  However, the Court need not address the issue because the claim fails for the reason stated above.

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **granted** to the extent that the breach of implied covenant of good faith and fair dealing (Claim II) against Defendants Nebola and Lightsey be **dismissed with prejudice**. *See Reynoldson v. Schillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

### E.      Claim III: Intentional Interference with Contract

Plaintiff asserts an intentional interference with contract claim against Defendants Cole Kepro and American Kiosks.  *Compl.* [#1] ¶ 93.  Defendants seek dismissal of the intentional interference with contract claim as to Defendant Cole Kepro only.[8]  *Motion* [#22] at 23-24.

Plaintiff alleges that Defendant Cole Kepro tortiously interfered with a contract when it intentionally and improperly induced Defendants Nebola and Lightsey to breach their Confidentiality Agreements.  *Compl.* [#1] ¶ 93.  Defendants argue that Plaintiff fails to plead facts that support a claim that Defendant Cole Kepro knew of the contracts and therefore it cannot be liable for intentional interference pursuant to Colorado law.  *Motion* [#22] at 23-24.

To sufficiently plead a claim of intentional interference with contract, a plaintiff must allege that: (1) the defendant was aware of the existence of the contract; (2) the defendant intended that one of the parties to the contract breach it; (3) the defendant induced the

---

[8] Defendants only specifically argue that this claim should be dismissed as to Defendant Cole Kepro, because Defendant Cole Kepro purportedly lacks the requisite knowledge to meet the intent standard.  *Motion* [#22] at 23-24.  Therefore, the Court does not address Defendant American Kiosks' alleged knowledge, if any, of the relevant contracts.

party to breach the contract or make it impossible for [him] to perform; and (4) the defendant "acted 'improperly' in causing the breach."  *See Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (applying Colorado law).  "[U]nder Colorado law it is sufficient to show the defendant reasonably should have known of the existence of a contract."  *Antarctica Films Argentica, S.A. v. Gaia, Inc.*, No. 22-cv-00500-NYW-STV, 2023 WL 2574371, at *12 (D. Colo. Mar. 20, 2023) (citing *Mueller v. Swift*, No. 15-cv-01974-WJM-KLM, 2017 WL 2362137, at *7 (D. Colo. May 31, 2017)).

Here, Plaintiff states that Defendant "Cole Kepro . . . was or should have been aware of Nebola and Lightsey's Confidentiality Agreement, and their obligations thereunder."  *Compl.* [#1] ¶ 92.  Plaintiff further alleges that "[a]fter Nebola and Lightsey's departure . . . [Plaintiff] warned . . . Cole Kepro's . . . attorneys of [Defendants'] continuing obligations to [Plaintiff]" and that Plaintiff "expressed its concern to Cole Kepro . . . regarding Nebola, Lightsey, and Rasmussen's taking of [Plaintiff's] trade secrets and confidential and proprietary information."  *Id*. ¶¶ 7, 9.  Based on these allegations, the Court finds that Plaintiff pleads sufficient facts, taken as true, to support the claim that Defendant Cole Kepro knew or should have known about the contracts.

Accordingly, the Court **recommends** that the Motion [#22] be **denied** to the extent that Defendants seek dismissal of the intentional interference with contract claim (Claim III).

**F.    Claim VII: Unjust Enrichment**

Plaintiff asserts its unjust enrichment claim against Defendants Nebola, Lightsey, Cole Kepro, and American Kiosks.  *Compl.* [#1] ¶ 129.  Defendants seeks dismissal of the unjust enrichment claim as to Defendants Nebola and Lightsey only.  *Motion* [#22] at

26-27.

Defendants argue that Plaintiff's claim for unjust enrichment against Defendant
Employees is duplicative of Plaintiff's breach of contract claim and therefore should be
dismissed because a party cannot recover for unjust enrichment when an express
contract covers the same subject matter as the quasi contract. *Id*. at 26. Plaintiff states
that it brings the unjust enrichment claim as an alternative to the breach of contract claim
and that it is therefore improper to dismiss the claim at this stage. *Response* [#32] at 20-
21.

Generally, a party may not recover for unjust enrichment when an express contract
covers the same subject matter as the unjust enrichment claim. *Stone Creek Bus. Ctr.,
LLLP v. Stone Creek-Colorado, LLC*, No. 20-cv-01413-PAB-GPG, 2022 WL 4448822, at
*2 (D. Colo. Sep. 23, 2022) (citing *Interbank Invs., LLC v. Eagle River Water & Sanitation
Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)). "[A] claim for unjust enrichment may not be
asserted if there is a valid contract covering the subject matter of the alleged obligation
to pay." *Jorgensen v. Colo. Rural Props. LLC*, 226 P.3d 1255, 1259 (Colo. App. 2010)
(citing *Bedard v. Martin*, 100 P.3d 583, 592 (Colo. App. 2004)). However, a party may
recover for unjust enrichment when the express contract is unenforceable. *See Interbank
Invs., LLC*, 77 P.3d at 816. A plaintiff may plead claims for breach of contract and unjust
enrichment in the alternative. *Stone Creek Bus. Ctr.*, 2022 WL 4448822, at *2; *see also
Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 860 (Colo. App. 2007).
However, the mere fact that a plaintiff's breach of contract argument may fail does not
allow it to plead unjust enrichment in the alternative when the complaint does not allege
that the contract was invalid or unenforceable. *Trejo v. Xclusive Staffing, Inc.*, No. 17-cv-

01602-RM-MJW, 2018 WL 4372724, at *8 (D. Colo. May 16, 2018) (citing *Echostar Satellite, LLC v. Splash Media Partners, L.P.*, No. 07-cv-02611-PAB-BNB, 2010 WL 3873282, at *8 (D. Colo. Sept. 29, 2010)).

Here, Plaintiff does not allege in its Complaint [#1] that the Confidentiality Agreements are unenforceable.[9]  Therefore, it is improper for Plaintiff to plead both theories of recovery in its Complaint [#1].

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **granted** to the extent that the unjust enrichment claim (Claim VII) against Defendants Nebola and Lightsey be **dismissed without prejudice**.  *See Reynoldson*, 907 F.2d at 127 (holding that prejudice should not attach to a dismissal when the plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

G.    **Claims IV, VIII, IX, and X and the Economic Loss Rule**

Plaintiff asserts claims for: (1) tortious interference with prospective business advantage against Defendants Nebola, Lightsey, Cole Kepro, and American Kiosks (Claim VI); (2) unfair competition against all Defendants (Claim VIII); (3) breach of duty of loyalty against Defendants Nebola, Lightsey, and Rasmussen (Claim IX); and (4) breach of fiduciary duty against Defendants Nebola and Lightsey (Claim X).  *Compl.* [#1] ¶¶ 98, 135, 143, 148.  Defendants seek dismissal of the above claims as to Defendants Nebola,

---

[9]  Although the parties mention enforceability in their briefs, there are no allegations in the Complaint [#1] addressing the issue of enforceability beyond one statement that "[t]he Confidentiality Agreement is a valid, binding, and enforceable contract . . . ."  *Compl.* [#1] ¶ 89; *Motion* [#22] at 18 n.8; *Response* [#32] at 21.  Although the Court makes no ruling on the issue at this time, a statement to the effect that Plaintiff pleads unjust enrichment in the alternative if the contract is found to be unenforceable may be sufficient to state a claim.  However, the operative version of the Complaint [#1] contains no allegations regarding unenforceability and no indication that this claim is plead in the alternative.

Lightsey, and Rasmussen. *Motion* [#22] at 25.

Defendants argue that the economic loss rule bars Plaintiff's claims against Defendant Employees for tortious interference with prospective business advantage, unfair competition, breach of duty of loyalty, and breach of fiduciary duty. *Id*. Defendants argue that the duty which they are alleged to have breached expressly stems from the Confidentiality Agreements and that Plaintiff is therefore barred from bringing tort actions separate from its breach of contract claim. *Id*. at 26. Plaintiff argues that it is bringing the tort claims in the alternative to the breach of contract claim and may do so at this stage. *Response* [#32] at 20.

Whether Colorado's economic loss rule bars a claim is a question of law. *Standard Bank, PLC v. Runge, Inc.*, 443 F. App'x 347, 349 (10th Cir. 2011). Pursuant to Colorado law, the economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Standard Bank*, 443 F. App'x at 349-350. The stated purpose of the economic loss rule is three-fold:

> (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build cost considerations into the contract because they will not be able to recover economic damages in tort.

*Id*. at 351 (citing *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004)). The economic loss rule may apply even in the absence of an explicit contract, if "the claimant seeks to remedy only an economic loss that arises from interrelated contracts." *Id*. at 350. As stated above, Colorado law allows a plaintiff to plead multiple theories in the alternative but only when the complaint alleges unenforceability of the underlying

contract.  *See Trejo*, 2018 WL 4372724 at *8; *Stone Creek Bus. Ctr.*, 2022 WL 4448822, at *2.

As discussed above in Section III.F. and footnote 9, Plaintiff does not allege in its Complaint [#1] that the Confidentiality Agreements are unenforceable, nor has Plaintiff clearly plead these claims in the alternative.  The Agreements create the express contractual duty to not abuse contractual information and solicit Plaintiff's employees and customers.  *See, e.g.*, *Ex. 1* [#1-1] at 3, 5.  The conduct prohibited by the Confidentiality Agreements is the conduct Plaintiff alleges as the basis for the tort claims.  *See Compl.* [#1] ¶¶ 97, 131, 139, 148.  Therefore, the Court finds that Plaintiff has failed to adequately plead facts to support an independent duty of care under tort law.

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **granted** to the extent that: Claim IV, tortious interference with prospective business advantage in part as to Defendants Nebola and Lightsey; Claim VIII, unfair competition, in part, as to Defendants Nebola, Lightsey, and Rasmussen; Claim IX, in full, breach of duty of loyalty as to Defendants Nebola, Lightsey, and Rasmussen; and Claim X, in full, breach of fiduciary duty as to Defendants Nebola and Lightsey all be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

## H.    Claim VIII: Unfair Competition

Plaintiff assert its unfair competition claim against all Defendants.  *Compl.* [#1] ¶ 135.  Defendants seek dismissal of the unfair competition claim as to only Defendants Cole Kepro and American Kiosks.  *Motion* [#22] at 24-25.

Plaintiff alleges that Defendants engaged in unfair competition by creating a "strikingly similar" kiosk to the one designed by Plaintiff for BOA.  *Compl.* [#1] ¶¶ 132-133.

Defendants argue that Plaintiff has not pled facts sufficient to support the element of unfair competition requiring that the conduct of Defendants is likely to confuse the public. *Motion* [#22] at 24-25. As discussed above, the economic loss rule bars the unfair competition claim against Defendant Employees. *See* Section III, G. Therefore, here, the Court only addresses the alleged conduct of Defendant Entities.

To state a claim for unfair competition, a plaintiff must allege sufficient facts to support the conclusion that a defendant "has copied the plaintiff's products or services or misappropriated plaintiff's name or operations in some regard" and that "this conduct is likely to deceive or confuse the public because of the difficulties in distinguishing between the plaintiff's and defendant's products and services." *NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1131 (D. Colo. 2007). "[T]he most important consideration remain[s] whether defendant's conduct will confuse or deceive the public." *Id.*

As discussed previously, Plaintiff has sufficiently pled facts to support a claim that Defendant Entities misappropriated Plaintiff's trade secrets and copied its products. *See* Section III, A-B. Therefore, the first part of an unfair competition claim is met. However, Plaintiff fails to allege facts to support the second part that the conduct is likely to confuse the public. The Court notes that Plaintiff alleges that Defendants created a "strikingly similar" kiosk with the same components arranged in a similar layout. *Compl.* [#1] ¶ 70. Further, Plaintiff alleges that Defendants copied portions of its website. *Id.* ¶ 71. However, the Court is not persuaded by the argument that these similarities will confuse the public. The websites both feature company names and the kiosks for both companies are intended to have the branding of other companies, like BOA, on them. *See Netquote, Inc.*, 504 F. Supp. at 1131 (discussing the holding in *Powell Prods., Inc. v. Marks*, 948 F.

Supp. 1469 (D. Colo. 1996) where the Court "rejected an unfair competition claim by a plaintiff who alleged that the defendant used knowledge gained from his position as plaintiff's former employee to build and sell the same type of machine plaintiff had designed"). In *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469 (D. Colo, 1996), the Court found that the defendant had never misrepresented whose product the equipment was. *Id.* Therefore, as alleged, any confusion as to the origin of a kiosk likely stems from the fact that both are wrapped in BOA logos, not because Defendants misrepresented the origin of their kiosk as that of Plaintiff.

Accordingly, the Court respectfully **recommends** that the Motion [#22] be **granted** to the extent that the unfair competition claim (Claim VIII) against Defendants Cole Kepro and American Kiosks be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.

## IV.  Conclusion

For the reasons set forth above,

IT IS HEREBY **RECOMMENDED** that the Motion [#22] be **GRANTED in part** and **DENIED in part**.

The Court **recommends** that the Motion [#22] be **granted** to the extent that the following claims be **dismissed**: (1) Claim II, in full, against Defendants Nebola and Lightsey, **with prejudice**; (2) Claim IV, in part, against Defendants Nebola and Lightsey, **without prejudice**; (3) Claim VII, in part, against Defendants Nebola and Lightsey, **without prejudice**; (4) Claim VIII, in full, against all Defendants, **without prejudice**; (5) Claim IX, in full, against Defendants Nebola, Lightsey, and Rasmussen, **without prejudice**; and (6) Claim X, in full, against Defendants Nebola and Lightsey, **without**

prejudice.

The Court **recommends** that the Motion [#22] be **denied** in all other respects.[10]

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 29, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[10] If this Recommendation is adopted in full, the following claims will remain: (1) Claim I, breach of contract against Defendants Nebola, Lightsey, and Rasmussen; (2) Claim III, intentional interference with contract against Defendants Cole Kepro and American Kiosks; (3) Claim IV, tortious interference with prospective business advantage against Defendants Cole Kepro and American Kiosks; (4) Claim V,  violation of the DTSA against all Defendants; (5) Claim VI, violation of the CUTSA against all Defendants; and (6) Claim VII, unjust enrichment against Defendants Cole Kepro and American Kiosks.